## HALE v. HARDON.

(Circuit Court of Appeals, First Circuit. May 31, 1899.)

### No. 265.

1. CORPORATIONS — STATUTORY LIABILITY OF STOCKHOLDERS — ENFORCEMENT EXTRATERRITORIALLY.

The course of federal decision for many years has been in the direction of upholding and enforcing extraterritorially the provisions of state statutes creating a liability on the part of stockholders in corporations for corporate debts, according to the fair intendment of such laws.

2. SAME—PROCEEDINGS UNDER MINNESOTA STATUTE—EFFECT OF ADJUDICATION ON NONRESIDENT STOCKHOLDERS.

The constitution of Minnesota makes stockholders in corporations, other than those organized for the carrying on of a manufacturing or mechanical business, liable to creditors of the corporation to an amount equal to their stock, and the statute of the state (Gen. St. 1894, c. 76) provides for the enforcement of such liability by a comprehensive proceeding in the local district court in the nature of a suit in equity, brought in behalf of all creditors, in which the court is not confined to any prescribed procedure, but is merely required to proceed "as in other cases." It has power to require all creditors to come in on notice and prove their claims, to appoint one or more receivers, and is required to ascertain the assets and liabilities of the corporation, and, if found insolvent, to make and enforce such assessment against the stockholders, within the constitutional limit, as shall be necessary. Held, that it was not essential that nonresident stockholders who were not within reach of the process of the court, and against whom it could not render a personal judgment, should be made parties to such a suit; but that, for the purposes of ascertaining the assets and liabilities of the corporation, they were represented by the corporation, or by its general receiver, in case one had been appointed prior to the institution of the

suit, and as to such matters they were bound by the adjudication, though not personally made parties.

**3. SAME.**

Such a stockholder, however, is not concluded by a finding upon the ultimate question of his individual liability, nor as to the measure of such liability, which is not an asset of the corporation, and in which neither the corporation nor its receiver has any legal interest, to render them representatives of the stockholders.

**4. SAME.**

The fact that a general receiver for the corporation, who was made defendant and served with process in such a suit, made default, does not affect the conclusive character of the decree therein.

**5. SAME.**

The state statute having provided that all corporate creditors who fail to come in, pursuant to notice given in such suit, shall be precluded from all benefit of the judgment · rendered therein and from any distribution thereunder, the amount of the indebtedness of the corporation, for the purpose of an ancillary suit to enforce the liability of a stockholder extraterritorially, must be taken as that shown by the claims established in the principal suit, in accordance with the statutory requirement.

**6. SAME—RIGHT OF RECEIVER TO MAINTAIN ANCILLARY SUITS.**

The purpose of the statute is to provide a remedy for the enforcement of the right given by the constitution, and which becomes a part of the contract between the creditors and stockholders of all Minnesota corporations; and as equity requires that all stockholders should be subjected to the same liability, which can only be enforced as to nonresident stockholders through the aid of courts of other jurisdictions, such courts should, on the ground of comity, be liberal in their construction of the statute, and in entertaining any proper suits to effect its purpose. As the statute gives an individual creditor no right of action against a stockholder, but provides the more equitable remedy of a single suit, through which the liability of all stockholders must be enforced, and the proceeds distributed among all creditors, it is competent for the court in such a suit, after determining the facts necessary to establish the liability of stockholders, to appoint a special receiver, charged with the duty of bringing appropriate ancillary actions for the enforcement of such liability against nonresident stockholders, the proceeds to be brought into the common fund for distribution; and, where the necessary adjudications are shown to have been made by the domiciliary court to support an action at law against a stockholder, a receiver so appointed will be permitted to maintain such an ancillary action in a federal court of another territorial jurisdiction against a stockholder resident therein.

Colt, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 89 Fed. 283.

M. H. Boutelle (John C. Coombs and Charles H. Hanson, on the brief), for plaintiff in error.

Charles K. Cobb, for defendant in error.

Before COLT, Circuit Judge, and WEBB and ALDRICH, District Judges.

ALDRICH, District Judge. This is an action at law in the Massachusetts district in aid of an equity proceeding in the corporate domicile to enforce a nonresident stockholder's liability under the laws of Minnesota. The provision of the Minnesota constitution, and the provisions of the statutes thereunder, are general and comprehensive, but clearly contemplate a proceeding in the nature of an

equity proceeding in that state for the benefit of all the creditors, in which all the debts and assets shall be ascertained, including the amounts due and remaining unpaid on subscriptions for stock, and that the avails of the stockholder's liability to the creditors, where-ever found, shall be ultimately drawn to the parent proceeding, and all for distribution, upon general insolvency principles and upon equitable grounds, among the creditors, without discrimination in favor of home creditors. The Minnesota law does not specify a particular remedy for regulating and enforcing the statutory right, but provides, in general terms, that a creditor who seeks to charge directors, trustees, or stockholders of a corporation, on account of any liability created by law, may file his complaint for that purpose in any district court which possesses jurisdiction to enforce such liability. It also provides that "the court shall proceed thereon, as in other cases," and, when necessary, take an account of all property and debts due to and from the corporation, and that the court shall appoint one or more receivers. It also in general terms expressly charges the court with the duty of causing a just and fair distribution of the property of the corporation and of the proceeds to be made among the creditors, and, if the property is insufficient to discharge its debts, to compel each stockholder to pay the amount due and remaining unpaid on the shares of stock by him held, and then, if the debts of the company remain unsatisfied, to ascertain and enforce the liability of the stockholders in the amount payable by each.

Section 3, art. 10, of the Minnesota constitution, declares that:

"Each stockholder in any corporation (excepting those organized for the purpose of carrying on any kind of manufacturing or mechanical business) shall be liable to the amount of stock held or owned by him."

The Statutes of Minnesota of 1894 (chapter 76), which, so far as the material provisions are concerned, are understood to be the same as the original statute providing a remedy in this class of cases, declare that:

"Sec. 5905. Whenever any creditor of a corporation seeks to charge the directors, trustees, or other superintending officers of such corporation, or the stockholders thereof, on account of any liability created by law, he may file his complaint for that purpose in any district court which possesses jurisdiction to enforce such liability.

"Sec. 5906. The court shall proceed thereon, as in other cases, and, when necessary, shall cause an account to be taken of the property and debts due to and from such corporation, and shall appoint one or more receivers.

"Sec. 5907. If, on the coming in of the answer or upon the taking of any such account, it appears that such corporation is insolvent, and that it has no property or effects to satisfy such creditors, the court may proceed, without appointing any receiver, to ascertain the respective liabilities of such directors and stockholders, and enforce the same by its judgment, as in other cases.

"Sec. 5908. Upon a final judgment in any such action to restrain a corporation or against directors or stockholders, the court shall cause a just and fair distribution of the property of such corporation and of the proceeds thereof to be made among its creditors.

"Sec. 5909. In all cases in which the directors or other officers of a corporation, or the stockholders thereof, are made parties to an action in which a judgment is rendered, if the property of such corporation is insufficient to discharge its debts, the court shall proceed to compel each stockholder to pay in the amount due and remaining unpaid on the shares of stock held by him, or so much thereof as is necessary to satisfy the debts of the company.

"Sec. 5910. If the debts of the company remain unsatisfied, the court shall proceed to ascertain the respective liabilities of the directors or other officers and of the stockholders, and to adjudge the amount payable by each, and enforce the judgment, as in other cases.

"Sec. 5911. Whenever any action is brought against any corporation, its directors or other superintending officers, or stockholders, according to the provisions of this chapter, the court, whenever it appears necessary or proper, may order notice to be published, in such a manner as it shall direct, requiring all the creditors of such corporation to exhibit their claims and become parties to the action, within a reasonable time, not less than six months from the first publication of such order, and, in default thereof, to be precluded from all benefit of the judgment which shall be rendered in such action, and from any distribution which shall be made under such judgment."

It is especially important to notice section 5911 of chapter 76, for it shows the comprehensiveness of the proceeding intended by the statute; provides for calling in creditors other than those bringing the complaint; and regulates the status of creditors, who fail to come in on statutory notice, in respect to their right to participate in the benefits resulting from such proceeding.

In a recent case in this circuit involving the Ohio statute (State Nat. Bank of Cleveland, Ohio, v. Sayward, 33 C. C. A. 564, 91 Fed. 443), some observations were made as to what the Ohio statute contemplated as to procedure, and what was intended should be done in the home state before liability under that statute could be enforced extraterritorially, without intimating what would have been done in that case if the joinder and ascertainments contemplated by such statute had been made. Relief was denied therein, for the reason that what was contemplated as to ascertainments and joinder had not been done.

We are now confronted with a statute somewhat similar, but with more comprehensive provisions as to ascertainments, and a remedy for enforcement of liability expressed in broader and more comprehensive terms, where, as a matter of substance, the creditors, but, strictly speaking, a receiver representing the interests of the creditors, claims to have taken all the steps, and secured all the ascertainments, in the parent forum, which the statute intended, and who now, in an extraterritorial forum, by an action at law in aid of the parent proceeding in the nature of equity, seeks to enforce the individual liability of a nonresident stockholder. So far as we know, this is the first instance in which this precise situation has been presented to the courts of a different sovereignty, exercising a distinct and independent jurisdiction.

The questions presented are—First, as to how far, if at all, this defendant and nonresident stockholder is bound by the action of the Minnesota court; and, second, whether this plaintiff, in his capacity as receiver for the creditors, appointed in the parent proceeding in Minnesota for the purpose of enforcing the liability of stockholders, may, in aid of that proceeding, maintain his action at law for such purpose in another and a federal jurisdiction, upon grounds of comity or otherwise.

We shall take up these questions in the order stated, and consider, first, the binding force of the ascertainments, judgments, and decrees in the parent proceeding.

We may well observe at the outset that for many years the steady trend of federal decision has been in the direction of upholding and enforcing extraterritorially this class of liabilities according to the fair intendment of the local law in cases properly within the provisions thereof, except where enforcement would unreasonably interfere with local vested creditor interests in states where enforcement is sought extraterritorially on grounds of comity, and perhaps, in some cases, where such enforcement would offend the general public policy of the state, while among the courts of the states there has been a diminishing diversity of decisions upon questions growing out of such statutory liabilities. It does not seem necessary to refer to the numerous decisions of the supreme court, and those of the various circuit courts of appeal and of the circuit courts, so often cited, which sustain this general proposition. We shall, therefore, only refer, in this connection, to the more recent cases in the United States courts, of Rhodes v. Bank, 13 C. C. A. 612, 66 Fed. 512; Whitman v. Bank, 28 C. C. A. 404, 83 Fed. 288; Elkhart Nat. Bank v. Northwestern Guaranty Loan Co., 30 C. C. A. 632, 87 Fed. 252; Dexter v. Edmands, 89 Fed. 467; and to the more recent decisions of the state courts, as showing the present tendency of judicial decision in such jurisdictions (Bagley v. Tyler, 43 Mo. App. 195; Guerney v. Moore, 131 Mo. 650, 32 S. W. 1132; Ferguson v. Sherman, 116 Cal. 169, 47 Pac. 1023; Cushing v. Perot, 175 Pa. St. 66, 34 Atl. 447; Bank v. Ellis, 172 Mass. 39, 51 N. E. 207, and the admirable opinion of Chief Justice Field in that case); and to the exceedingly well-reasoned cases of Bank v. Lawrence (decided in Michigan, July, 1898) 76 N. W. 105; and Bell v. Farwell (decided by the Illinois supreme court in December, 1898), 52 N. E. 346.

It would not be useful to undertake a review of the decisions of the various states, and it is quite needless to say that we must follow the decisions of the supreme court, so far as they cover the questions in this case, and as to particular questions, if any, not covered by the supreme court decisions, that we should, in a case of this character, be governed by the judicial policy of the federal law, rather than that of any particular state.

Aside from the principle that, in cases of this class, the rights of the parties shall be measured by the local law, the questions presented are not local questions, as some authorities treat them, between citizens of different states, to be influenced and to be settled by different state policies and local pecuniary interests, and the question of liability is not a question that should depend upon state lines. In this case the liability was created by the state of Minnesota; the place of the contract is Minnesota; the liability and the rights with respect to which the parties had their contract, their dealings, and their reliance is a statutory liability or a statutory right; and, according to well-understood doctrines, the law of the home forum must govern.

These questions cannot be considered in a federal court upon the view made prominent in a recent New York case (Marshall v. Sherman, 42 N. E. 419, 422, 423), upon the general question of policy as to enforcement, where it is suggested that these corporate enter-

prises are promoted in the West, and the money for the prosecution to a large extent borrowed in the East, either in the form of direct loans upon some kind of security, or by inducing many of our citizens to purchase stock in corporations organized for the purpose under local laws; that a vast sum, in the aggregate, has been lost; that while some blame is to be attributed to the financial depression, and the consequent derangement of business, it is in a much greater degree attributable to the gross mismanagement and dishonesty of the managers and promoters; and that in some cases, though the managers well knew they were helplessly involved, they continued to transact business, borrowing recklessly, and pledging the assets in their possession or under their control. We cannot adopt this view, for the reason that in judicial proceedings, except where the question of fraud or reckless management is made an issue, such considerations are contrary to principle, in the direction of repudiation, subversive of judicial right and of justice, and fraught with danger to the idea of permanent and uniform rule. A judicial result influenced by such considerations can stand neither the test of the rule of right nor of the requirements of prudence. In the next decade the stockholders may reside in the West and the creditors in the East. In the next case, the creditors may reside in the East as well as the stockholders; or, as in the present case, the creditors may be scattered over many states. It is not a question where the pecuniary interests are, but a question of right,—a question whether an unquestioned liability shall be enforced outside of the parent forum, after all has been done there that can be done, or whether the unquestionable right shall exist without a remedy.

Cases of the class to which we have just referred seem to overlook the fact that the stockholders in the primary and in the ultimate sense are the corporation. The corporation is the enterprise of the stockholders. The corporate existence is created by the stockholders under permissive laws. The business is the business of the stockholders, and the profits, where there are profits, belong to the stockholders. The officers and agents of the corporation who deal with the public are, in a sense at least, the agents of the stockholders, and the superadded stockholders' liability is designed as an additional security and as an inducement to the public to deal with the enterprise in which the stockholders are engaged.

As said by the supreme court in Sanger v. Upton, 91 U. S. 56, 59, a stockholder is an integral part of the corporation, and, in view of the law, is before the court in all proceedings touching the body of which he is a member; and in Hawkins v. Glenn, 131 U. S. 319, 329, 9 Sup. Ct. 739, a stockholder is so far an integral part of the corporation that, in the view of the law, he is privy to the proceedings touching the body of which he is a member; and, in effect, in Vanderwerken v. Glenn, 85 Va. 9, 6 S. E. 806; Lewis' Adm'r v. Glenn, 84 Va. 947, 6 S. E. 866; Hamilton v. Glenn, 85 Va. 901, 9 S. E. 129,—stockholders are a part of the corporation, and represented by it. See, also, Gluck & Becker, Rec. (2d Ed.) p. 188.

Corporate enterprises and investments, logically enough, result from the growth of the country and the natural and necessary ex-

pansion of business, regardless of state lines, and the newly-created statutory liability in the several states has grown out of the modern development of interstate dealings; and, as said by a recent author:

"The complexity of our system of government, the intimate business relations of citizens of the respective states, and the great tide of interstate commerce, as well as enlightened public policy demanding an equitable distribution of the assets of insolvent corporations, properly compel the courts to recognize the existence of a broad and liberal rule under the name of 'comity,' and the justice of its enforcement."

In the recent case of Dexter v. Edmands, 89 Fed. 467, 470, Judge Lowell remarked:

"Indeed, I find it difficult to imagine what would be the condition of this government if the federal courts should refuse, on any of the grounds just mentioned, to recognize and enforce the rights arising under a state statute which had been formally adopted, and was not contrary either to the constitution of the United States or to that of the state adopting it."

In view of the present exigencies of business between corporations and citizens of different states, and the various rights incident thereto, the remark of Judge Lowell is not an unwarrantable suggestion of the uncertainty, confusion, and danger which would result from a rule of nonenforcement in respect to this class of statutory liabilities.

In the course of the proceeding in Minnesota in which the Northwestern Guaranty Loan Association was adjudged insolvent, a receiver was appointed, who took charge of all the property and effects belonging to the company. There were several proceedings in the Minnesota court, but, as we understand it, those subsequent to the parent insolvency proceeding were in aid thereof, and were, in effect, in that cause, and invoked for the purpose of doing the things in Minnesota which the statute contemplated should be done. All the Minnesota stockholders were brought in, and the corporation and the officers thereof were parties, as well as the general receiver of the assets of the corporation after his appointment; and the proceedings contemplated by the law for the purpose of bringing the creditors into the corporate domicile, to the end that they should participate in the ascertainments and receive their statutory pro rata rights, were had for that purpose, and, so far as appears, as provided by the laws of the state.

After such comprehensive proceedings in the corporate domicile, it was there decreed, among other things, as shown by the special findings of the circuit court, that the sums owing by the Northwestern Guaranty Loan Association to its creditors, which include between 600 and 700 different persons and corporations, widely scattered, in the aggregate were $3,367,394.34. It was also found and decreed that the total assets and property of the company in any wise applicable to the payment of the indebtedness were $450,000, and that the total capital stock of the company was 12,500 shares, of the par value of $100 each. The names of the several stockholders, and the amount of stock held by each, were found, and it was declared that each stockholder was liable upon such stock to the creditors therein ascertained to an amount equal to the par value of

95 F.—48

the stock held by him. It was also decreed "that plaintiff, and said intervening creditors so ascertained, recover, accordingly, from each of the several stockholder defendants within said state of Minnesota, a sum equal to the par value of the stock held by such stockholder." It was also decreed "that W. E. Hale [who is this plaintiff] be appointed receiver for collecting and enforcing, for and in behalf of said ascertained creditors, said judgments against such Minnesota stockholders, and for the purpose of collection, by such proceedings as might be proper, the liability of nonresident stockholders of said Northwestern Guaranty Loan Company over whom the court, by reason of nonresidence, had not acquired jurisdiction for the purpose of rendering personal judgment." It was also decreed that the liability funds collected by Mr. Hale as receiver should be held for the purpose of equal and pro rata distribution among the ascertained creditors, and subject to the order of that court, and that the court retain jurisdiction of the cause for the purpose of making such other and further orders and decrees in the matter of distribution as might be necessary to protect the rights of the several creditors in the premises.

It will be seen that while the court in the parent proceeding undertook to find the names of the several stockholders and the amount of stock held by each, including nonresidents, and to declare the amount for which each was liable, as will be seen by paragraphs 6 and 7 of the special findings of the circuit court, it only undertook to render personal judgment against the Minnesota stockholders, and expressly exempted nonresident stockholders from any supposed operation of a personal judgment by authorizing and directing the receiver to take such proceedings as might be proper for the purpose of collecting the liability of the nonresident stockholders over whom, as the Minnesota court declared, by reason of nonresidence, it had not acquired jurisdiction for the purpose of rendering personal judgment.

The general rule of equity, which requires all parties to be joined, means all necessary parties within reach of the process where the proceedings must be had. To require joinder and service upon all the stockholders, resident and nonresident, in a proceeding in the parent forum to make the statutory ascertainments in a case like this, would be simply requiring an impossibility, and would thus operate as a denial of the intended statutory liability to all the creditors. The rule of joinder is not so imperative in the absence of an express statute requiring it. The ascertainments of the debts and assets of the corporation, and the judgments against the resident stockholders, in the parent forum, are in no sense personal judgments against the nonresident stockholders, but are necessary preliminaries to a recovery in an extraterritorial proceeding against nonresident stockholders. To enforce extraterritorially the individual stockholder liability created by statute, and to entitle the creditors, or the parties representing them, to judgment, it is incumbent upon plaintiffs to show that the ascertainments intended by the statute have been made.

If A. guaranties payment by B. to C., but expressly provides that he shall not be liable until all reasonable efforts have been made by C. to collect of B., A. need not necessarily be made a party to the attempts to collect of B.; but, in an action to enforce the liability of A., the reasonable efforts to collect of B., which A. made a condition of his liability, must be shown. So, in this case, the liability, if any, of nonresident stockholders to the creditors or their representatives is under the constitutional provision and the statutes, not under the judgments in Minnesota or the declaration of the court of Minnesota that they were stockholders and that they were liable. But such constitutional and statutory liability, in contemplation of law, is conditioned upon certain equitable proceedings, which, speaking generally, mean proceedings to ascertain all the indebtedness, property, and assets of the corporation, to pay out of the assets, if possible, and, if not possible to pay all, to ascertain how far the assets will go, and the relation which the remaining indebtedness sustains to the maximum liability limit of all stockholders, or perhaps of all solvent stockholders; and, in order to recover upon the liability, it must be shown that the contemplated statutory condition has been performed.

So, as has been said, in effect, in an ancillary proceeding like the one at bar, the statute contemplates that the plaintiff, before recovery, shall show, by record or otherwise, that the ascertainments in respect to the creditors and the assets of the corporation, including the debts due the corporation, have been made in a comprehensive proceeding in the parent forum, with the necessary parties to that end. As to these ascertainments in which the corporation is interested, in a proceeding in which the corporation or its successor is a party and for such purposes representing the stockholder, who is a part of the corporation, the stockholder is bound by the adjudications in Minnesota. But, as has been said, a nonresident stockholder, who is sued extraterritorially on the ground of individual liability under the constitution and statutes of Minnesota, cannot be treated as represented by the corporation to the extent of being concluded upon the question of personal liability by the judgments or decrees of a court in a proceeding to which he was not a party. Such liability is not like that of being assessed for nonpayment of the full amount of subscription to stock, for the reason that it is not an asset of the corporation.

The Minnesota law was a part of the contract which resulted from the defendant becoming a stockholder, and, as a stockholder, he is bound by such equitable and legal proceedings in the local courts, and such ascertainments as to purely corporate matters, as the statute contemplated. As a part of the implied contract, the stockholder agreed that the ascertainments, which the statute intended and which the situation resulting from insolvency required, should be made in accordance with the usual and ordinary course of legal and equitable procedure in that state. It was not understood that the statutory liability should have no force unless the nonresident stockholder was made a party to the proceedings as to

corporate affairs which the statute intended and expressly provided should be had in the district courts of Minnesota. Making a nonresident stockholder a party to the contemplated legal and equitable proceeding for such purposes was a thing impossible, and a construction requiring it would render the statutory liability inoperative at its inception. The creditors' claims were claims against the corporation, and, so far as stockholders' interests are concerned in the indebtedness, they were represented by the corporation and its successor, the general receiver.

When a corporation becomes insolvent, and the affairs of the corporation are being settled in the ordinary course of insolvency proceedings, and a general receiver is appointed for such purpose, all the rights and powers of directors in an existing corporation, to answer for the interest of stockholders, are necessarily centered in such receiver. Speaking generally, he is subrogated to all the powers and rights of the directors, in respect to corporate affairs, by virtue of which directors can answer and act for stockholders. What the directors or other officers may do, like representing stockholders in defending actions involving the rights and obligations of the corporation, in the absence of fraud or collusion (Heggie v. Association, 107 N. C. 581, 590, 12 S. E. 275), when the corporation is doing business, may be done by the courts or their receivers of the assets and interests of the corporation; and where the corporation may be served with process, and answer in proceedings as to corporate interests, such as the indebtedness thereof, and bind the stockholders, the general receiver may be served with process and answer. Otherwise, the corporate affairs of an insolvent corporation could not be settled in insolvency, whereas they can be settled by binding adjudications, if not insolvent; and it would therefore follow that the corporate affairs could be concluded where an individual creditor interest requires it, and under a single individual necessity, while, in a situation where the general and several creditor interests require it, and the necessity is general, it cannot be concluded, although the stockholder interests are represented and protected by the general receiver under appointment, and by virtue of the duty and responsibility which result therefrom.

It is difficult to perceive that there can be any distinction, in respect to the rule of conclusiveness as to the corporate affairs, between a proceeding to establish the corporate indebtedness against the corporation, where the directors or other proper officers are served, and a proceeding against the general receiver thereof upon service, who is the successor of the corporation in respect to all the interests involved in its affairs. Indeed, as said by Mr. Justice Gray, in respect to an order of assessment, in Telegraph Co. v. Purdy, 162 U. S. 329, 336, 16 Sup. Ct. 810, 813: "The order of assessment, whether made by the directors, as provided in the contract of subscription, or by the court as the successor, in this respect of the directors, was doubtless, unless directly attacked and set aside by appropriate judicial proceedings, conclusive evidence of the necessity for making such an assessment, and to that extent bound every stockholder, without personal notice,"—citing Hawkins v. Glenn,

131 U. S. 319, 9 Sup. Ct. 739; Glenn v. Liggett, 135 U. S. 533, 10 Sup. Ct. 867; Glenn v. Marbury, 145 U. S. 499, 12 Sup. Ct. 914.

As said, we fail to discover any reasonable distinction between the rule of conclusiveness, in respect to a judgment for indebtedness against a going corporation represented by directors, which is established by repeated authorities, and a judgment or decree against an insolvent corporation represented by a general receiver, who is the quasi judicial successor of the corporation and its interests, and whose duty it is, under the power and authority of the court, to protect and care for the corporate estate, and, as an incident thereto, to resist unwarrantable claims against the corporation, in the interest of all the creditors and all the stockholders. In the one case the stockholder is represented by the officers of the corporation, and in the other by the general receiver, who, under the authority and the decree of the court, has become the lawful and controlling successor of the corporation and its interests.

We cannot conceive that there can be any reason for a different rule in respect to the ascertainment of the corporate indebtedness, and the conclusive establishment of the fact of indebtedness by judgment, and the ascertainment of the necessity for an assessment upon the stockholders, and the establishment of such fact by judgment or decree, without notice to the stockholder. Indeed, Holland v. Development Co., 65 Minn. 324, 68 N. W. 50, a well-reasoned case, holds that a judgment against a corporation is conclusive upon the question of corporate indebtedness in a subsequent action against a stockholder to enforce individual liability. The indebtedness against a corporation is as much a corporate affair as an assessment upon the stockholders, for the indebtedness relates to the corporate interests as well as an assessment. When an assessment is made and paid, the money becomes a corporate asset, and increases the corporate estate; and, if indebtedness is found, it becomes a corporate liability, and reduces the corporate estate.

The conclusiveness of the assessment upon the stockholder, whether made by the directors of the corporation or by the court as its successor, is sufficiently established by the decisions of the supreme court in Telegraph Co. v. Purdy, 162 U. S. 329, 336, 16 Sup. Ct. 810, and the cases there cited. To the same point, that orders of assessment by the court, upon stockholders in insolvent corporations, in the course of insolvency proceedings, wherein the court is the successor of the corporation, are binding without notice, are Marson v. Deither, 49 Minn. 423, 426, 52 N. W. 38, and In re Minnehaha Driving Park Ass'n, 53 Minn. 423, 427, 55 N. W. 598.

It has been repeatedly held, and the great weight of authority is, that a judgment against a corporation in favor of a creditor, without notice to a stockholder, conclusively establishes the fact of indebtedness, while, in a comparatively few jurisdictions, it is treated as prima facie evidence only. Flash v. Conn, 109 U. S. 371, 380. 3 Sup. Ct. 263; Hanson v. Davison (Minn.) 76 N. W. 254, 256; Holland v. Development Co., 65 Minn. 324, 68 N. W. 50; Grund v. Tucker, 5 Kan. 70; Ball v. Reese, 58 Kan. 614, 50 Pac. 875; Cook, Stock & S. § 224; Thayer v. Printing Co., 108 Mass. 523, 528; Came v.

Brigham, 39 Me. 35; Milliken v. Whitehouse, 49 Me. 527, 529; Bullock v. Kilgour, 39 Ohio St. 543; Bank v. Warren, 52 Mich. 557, 561, 18 N. W. 356; Henderson v. Turngren (Utah) 35 Pac. 495; Bissit v. Navigation Co., 15 Fed. 353, 361, note; Wilson v. Stockholders, 43 Pa. St. 424; Donworth v. Coolbaugh, 5 Iowa, 300; Bank of Australasia v. Nias, 16 Q. B. 717, 4 Eng. Law & Eq. 252; Borland v. Haven, 37 Fed. 394, 413; Powell v. Railway Co., 38 Fed. 187; Tabor v. Bank, 10 C. C. A. 429, 62 Fed. 383, 388; McVickar v. Jones, 70 Fed. 754; Mortgage Co. v. Woodworth, 79 Fed. 951; Guerney v. Moore, 131 Mo. 650, 666, 32 S. W. 1132; Heggie v. Association, 107 N. C. 581, 12 S. E. 275; Warrington v. Ball, 62 U. S. App. 413, 417, 33 C. C. A. 609, 90 Fed. 464; Mor. Priv. Corp. § 886; Thomp. Liab. Stockh. § 337; Thomp. Corp. §§ 3392–3395, and numerous cases cited in note 1 to section 3392, including Bradley v. Eyre, 11 Mees. & W. 432; Freem. Judgm. § 177.

There is nothing in the record of the case at bar to show that any part of the indebtedness, upon which the ascertainments and decrees of the Minnesota court were made, was founded upon tort, and there is nothing to show that any part of the indebtedness was contracted by the corporate officers subsequent to the insolvency proceedings, as in the case of Schrader v. Bank, 133 U. S. 67, 10 Sup. Ct. 238; and the statutory ascertainments in question do not stand like the judgment in favor of the plaintiff in Danforth v. Chemical Co. (Minn.) 71 N. W. 274, where the creditor brought suit directly against the corporation, after sequestration proceedings had been taken against it and a receiver appointed, who had become vested with the title of the corporate·property, and who was·in charge of the corporate interests as the successor of the corporation, and after the notice provided by the Minnesota statute had been given to creditors to come in and prove their claims.

In view of the rule, which accords value, and ordinarily controlling force, to the decisions of the highest courts of the states in respect to the construction and interpretation of their own statutes and remedies, we consider the local case of Hanson v. Davison, 76 N. W. 254, as, at least, entitled to great weight. In that case there was an authoritative and comprehensive interpretation of the statute in question by the supreme court of Minnesota, and a full explanation of the nature and scope of the remedy contemplated, which fully sustains the grounds and reasoning on which we base the decision of the case at bar, both as to the remedy intended and the right of the creditor receiver to sue and maintain his action. It is true that, in that case, the judgment of dismissal was affirmed; but it was upon the distinct ground that the rights of the creditors under the statute were involved in the original case, and that "no one creditor can maintain an action at law to enforce the liability for his exclusive benefit." It was further said that, after the statutory ascertainments had been made, and the proper decrees as to corporate affairs, there was "nothing to prevent the prosecution, after such decree is entered, of an ancillary action in another jurisdiction by the receiver appointed to collect and distribute its funds arising from the stockholders' liability in the original action, or by any other party or person who may be

appointed by the court for that purpose, against any stockholder who was not made a party to the original action, to collect from him the amount of his liability on account of the debts of the corporation, for the benefit of all the creditors." It is also pointed out in that case that, if stockholders are only proceeded against for their pro rata share of the deficiency, treating all of the stockholders as solvent, the objections that inequitable conditions might result from rights of contribution wholly fail.

It is urged that the proceedings against the general receiver of the Minnesota corporation and the resident stockholders, in which the ascertainments as to indebtedness were made, were in substance proceedings for the purpose of enforcing individual stockholder liability, and therefore were essentially and in effect proceedings inter alios as to stockholders not summoned nor appearing. The same may be said of a proceeding against a Kansas corporation to establish corporate indebtedness, which is a necessary preliminary to an extraterritorial proceeding on a judgment against a stockholder to enforce the statutory stockholders' liability. It is difficult, as already observed, for us to see any distinction between the conclusiveness, in respect to indebtedness, of a judgment against a Kansas corporation, and the decree in this case establishing the indebtedness of the Minnesota corporation. Under the Kansas statute, although a nonresident stockholder is not a party to the proceeding against a corporation, as seen by the authorities heretofore cited, the federal authorities hold, and the weight of state authority is, that the judgment, in respect to indebtedness, is conclusive against a nonresident stockholder, although not a party. In neither case is the preliminary proceeding directly against the nonresident stockholder, but in each case the nonresident stockholder liability may be ultimately affected by the local judgment or decree of corporate indebtedness.

In the case of Flash v. Conn, 109 U. S. 371, 3 Sup. Ct. 263, which involved the Kansas statute, the court laid down a rule, in respect to the conclusiveness of the assessment, which goes as far as it is necessary to go in the present case. It is there said, at page 380, 109 U. S., and page 269, 3 Sup. Ct.:

"But in this case the statute makes every stockholder individually liable for the debts of the company, for an amount equal to the amount of his stock. This liability is fixed, and does not depend on the liability of other stockholders. * * * Any creditor who has recovered judgment against the company, and sued out execution thereon, which has been returned unsatisfied, may sue any stockholder."

This theory of the conclusiveness upon the stockholder of the ascertainments or decrees or judgments against the corporation is not novel or extraordinary. It is based, in all the cases cited, upon the idea that the stockholder is so far an integral part of the corporation as to be privy to the proceedings against it, and bound by representation. See, also, Thomp. Corp. § 3395; Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739; Lewis' Adm'r v. Glenn, 84 Va. 947, 6 S. E. 866; Glenn v. Liggett, 135 U. S. 533, 10 Sup. Ct. 867; Sanger v. Upton, 91 U. S. 56, 58; Glenn v. Williams, 60 Md. 93, 116; Hamilton v. Glenn, 85 Va. 901, 9 S. E. 129. Somewhat analogous is the theory that

judgments against towns or counties (Freem. Judgm. § 178; Clark v. Wolf, 29 Iowa, 197) are binding upon residents or citizens, although they are not parties to a suit. We need not enlarge the discussion of this question by referring to the line of authorities which establish the rule of conclusiveness of proceedings by the comptroller of the treasury in respect to national banks, which bind stockholders as to the necessity for an assessment, the amount of the assessment, the necessity and the action involved in closing banks, and as to appointment of and suits by a receiver, all of which are sustained on the ground of contract, although without notice to the stockholder, and without the exercise of judicial function.

According to the record (pages 30, 52):

"On the 20th day of May, 1893, said defendant, Northwestern Guaranty Loan Company, was, and now is, insolvent; [and] that in insolvency proceedings pending in this [that] court, on said 20th day of May, 1893, said Northwestern Guaranty Loan Company was duly adjudged, by the district court of the Fourth district, in and for the county of Hennepin, state of Minnesota, to be insolvent; and, under and pursuant to the general laws of the state of Minnesota, relating to assignments in insolvency proceedings for the benefit of creditors, and for the appointment of receivers, said Minneapolis Trust Company is duly appointed the receiver of said Northwestern Guaranty Loan Company."

The findings in respect to the corporate affairs, and the decrees and judgments based thereon, were in this proceeding and in others incident to and in aid thereof; and we have no hesitation in holding that the findings and decrees of the Minnesota court as to the amount of corporate indebtedness, and the amount of indebtedness proven or established in the parent proceeding, and that the findings and decrees as to the rights of the creditors, are evidence in the proceeding at bar against a stockholder, although no service was made upon him, or notice given of the proceeding in Minnesota; and we have no hesitation in saying that the doctrine is established upon principle, and by an overwhelming weight of authority (which, among other considerations, involves the idea of the constitutional guaranty that full force and credit shall be given to the judicial proceedings of every state, and also of enforcement according to the law of the home forum), that such findings, judgments, and decrees are conclusive, in the absence of fraud or collusion.

There was service upon the general receiver, and the fact that the record shows that the general receiver of the corporation in the Minnesota proceeding suffered ascertainments and a decree by default does not impair the conclusive character of such decree, there being no pretense of fraud or collusion. It is just as conclusive as "a record estoppel that the corporate body has no just defense, and can say nothing in bar of the claim preferred against it," as would be a judgment or decree rendered after litigation. Freem. Judgm. § 177; Belmont v. Coleman, 21 N. Y. 96, 101; Bradley v. Eyre, 11 Mees. & W. 432, 450; Holland v. Development Co., 65 Minn. 324, 68 N. W. 50. These judgments against a corporation are not only treated as binding upon stockholders without notice, but as a necessary preliminary to recovery against a stockholder under a statutory liability; and Bank v. Francklyn goes so far as to say that proceedings in bankruptcy against a corporation do not so far dis-

solve the corporation, or discharge it from its debts, as to prevent any creditor from suing it for so much debt as remains unpaid, and recovering a judgment against it, for the purpose of charging its stockholders. Bank v. Francklyn, 120 U. S. 747, 757, 7 Sup. Ct. 757.

The fact was found below that all the stockholder liability and corporate assets are less than the sum due all the creditors. It is not, however, affirmatively found by the circuit court that such assets and liabilities are less than the sums due creditors who have entitled themselves to dividends under the statutes and proceedings in Minnesota. Section 5911 of the Minnesota Statutes requires all creditors of corporations to exhibit their claims and become parties to the action within a reasonable time, not less than six months from the first publication of such order; and it also provides that, in default of their coming in, they shall "be precluded from all benefit of the judgment which shall be rendered in such action, and from any distribution which shall be made under such judgment." It is true the supreme court of Minnesota, in Spooner v. Bay of St. Louis Syndicate, 48 Minn. 313, 51 N. W. 377, held that creditors might be allowed to come in after the time stated in the publications; but we do not think recovery should go on indefinitely, on grounds of comity, against stockholders, without regard to the fact whether there are creditors in the Minnesota proceeding to take the dividends.

Under the line of reasoning which we have adopted as to the binding force of the local constitutional provision, the local statutes, and the local proceedings, if the stockholders are bound the creditors are; and if the creditors are bound they are held to all the provisions of the local law with respect to the rights in question. If they contracted with reference to the Minnesota statute, they must be held to have contracted with reference to the whole of it, section 5911 as well as the other provisions. Therefore, if the whole or some part of the creditors failed to take advantage of the opportunity to appear and take part in the distribution of the assets and the avails of the liabilities, they are precluded by the terms of the statute; and it cannot be said that a receiver for the creditor interests should go on recovering indefinitely, without regard to whether there are creditor interests in the parent proceeding entitled to dividends.

The finding of the Minnesota court as to the ultimate question of nonresident stockholder liability, and that of the measure of such liability, not being conclusive, these questions must be treated as open questions, to be determined below, upon the grounds herein stated. As to the last question, it is true the Minnesota record, which is doubtless conclusive, in the absence of fraud, sets out that the creditors did avail themselves of the privilege of presenting their claims in the parent proceeding, in pursuance of section 5911 of chapter 76 of the General Statutes of 1894; but such fact, as shown by the Minnesota record, as has been said, was not distinctly found by the circuit court.

We must consider this case upon the findings of the circuit court. This court cannot go to the Minnesota record, however conclusive

it may be, and determine the question of fact as to the status of creditor interests entitled to dividends. That question is in the first instance for the circuit court, and for that reason we cannot say that the plaintiff is entitled to recover the full amount of the statutory liability. It will therefore be open to the plaintiff, on a new trial, if one be granted, to show, by the Minnesota record or other competent evidence, the relation which the creditor interests entitled to dividends sustained to the assets and stockholder liabilities, and, of course, open to the defendant to direct his competent evidence, if any, to the same point. We do not undertake to state the measure of damages in this case; but, if the plaintiff is entitled to maintain his action at law in aid of the parent proceeding to enforce the stockholder liability, the stockholder's liability would be his ratable proportion of a sum sufficient to meet the creditor interests entitled to dividends, not to exceed, of course, in any event, the amount of his stock. So it is not a question of the entire corporate indebtedness or creditor interests, but a question as to the creditor interests entitled to dividends in the Minnesota proceeding.

While we consider the cases of Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739; Telegraph Co. v. Purdy, 162 U. S. 329, 336, 337, 16 Sup. Ct. 810; Hanson v. Davison (Minn.) 76 N. W. 254; and Relfe v. Rundle, 103 U. S. 222,—authorities to the extent that the stockholders are bound by the action of the corporation, or its successor, in the exercise of corporate powers essential to the collection of debts, in respect to corporate matters like requiring the payment of unpaid subscriptions to stock, which are part of the assets, and as to ascertainments in which the corporation is interested, like the ascertainment of the indebtedness of the corporation, we do not think they go to the length claimed by the plaintiff in this case, for the reason, as has already been said, the individual liability is not an asset of the corporation. Indeed, the Minnesota court did not undertake to render judgment upon the nonresident stockholders' liability, nor against the Minnesota stockholders upon their individual liability, otherwise than upon service, which is a prerequisite to judgments in personam. Pennoyer v. Neff, 95 U. S. 714; Hekking v. Pfaff, 33 C. C. A. 328, 91 Fed. 60, 50 U. S. App. 484.

So, in an ancillary proceeding like this, to enforce individual liability to the creditors, it must be made to appear by the records in respect to the parent proceeding, or otherwise, that the proper statutory ascertainments have been made as to the domiciliary matters; and since the question of fact whether the nonresident party was a stockholder, and, as such, liable individually under the statute, could not be concluded in a proceeding in which he was not a party except as a member or as an integral part of the corporation, it is an open question, to be determined by the proper tribunal, in a case to which he is a party,—it being open, of course, to the defendant stockholder to point out that the domiciliary adjudications and ascertainments were not sufficiently comprehensive to answer the requirements of the statutes, and to show that he was not a stockholder, or that the proceedings were fraudulent.

There is no question of fraud or collusion here. The fact is found by the court below that all the supposed stockholder liabilities, to-

gether with the assets, are less than the sums due the creditors. The fact was also found below that the defendant was a stockholder at the date of the adjudication of the insolvency of the corporation; and as our conclusion is that the proceedings in Minnesota were sufficiently comprehensive as to domiciliary adjudications and ascertainments, and such as the constitution and statutes of Minnesota contemplated. and such as the statutes required, it follows that the defendant's liability results by force of the constitutional provision and the statutes in respect to which he, by implication, contracted by becoming a stockholder, and that the plaintiff is entitled to recover, provided he is entitled to maintain his action in this jurisdiction as a receiver or representative of the creditor interests in aid of the parent proceeding in Minnesota.

We will now consider the question whether this receiver, as the representative of the creditor interests, may maintain his action extraterritorially, in aid of the parent proceeding and for the purpose of enforcing the stockholder liability.

The case of In re People's Live-Stock Ins. Co., 56 Minn. 180, 57 N. W. 468, holds that unpaid stock subscriptions were corporate assets, and might be recovered by the receiver, which, in that case, was a general receiver in respect to the assets of the corporation. It is also said in the same case: "The constitutional or statutory liability is directly to the creditors. The corporation cannot enforce it. It is no part of its assets." See, also, Olson v. Cook, 57 Minn. 552, 59 N. W. 635; Minneapolis Baseball Co. v. City Bank, 66 Minn. 441, 445, 69 N. W. 331; Smith, Rec. § 78. So, it follows that the common-law receiver or the statutory receiver of the effects of a corporation, unless expressly authorized by statute, has no authority to enforce the individual liability of stockholders for the purpose of paying the debts of the corporation. It is clear that single creditors could not maintain an action under the Minnesota statute against a single stockholder in the corporate domicile or elsewhere, for the statute contemplates an accounting and pro rata distribution among all the creditors; and it is extremely doubtful, if all the creditors should join, whether an action could be maintained in their own behalf, subsequent to the insolvency proceeding in the parent forum. Creditors who deal with the corporation are bound by the law governing it and its affairs, as well as stockholders. See Relfe v. Rundle. 103 U. S. 222; Railway Co. v. Gebhard, 109 U. S. 527, 3 Sup. Ct. 363.

In Relfe v. Rundle it is said, at page 226:

"Every policy holder and creditor in Louisiana is charged with notice of this charter right, which all interested in the affairs of the corporation can insist shall be regarded. The appellees [who were Louisiana creditors or policy holders], when they contracted with the Missouri corporation, impliedly agreed that, if the corporation was dissolved under the Missouri laws, the superintendent of the insurance department of the state should represent the company in all suits instituted by them affecting the winding up of its affairs."

In Railway Co. v. Gebhard, it is said (page 537, 109 U. S., and page 369, 3 Sup. Ct.):

"A corporation must dwell in the place of its creation, and cannot migrate to another sovereignty. * * * And whatever legislative control it is subjected to at home must be recognized and submitted to by those who deal with

it elsewhere. * * * Such being the law, it follows that every person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the affairs and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes."

Page 538, 109 U. S., and page 370, 3 Sup. Ct.:

"He is conclusively presumed to have contracted with a view to such laws of that government because the corporation must, of necessity, be controlled by them, and it has no power to contract with a view to any other laws with which they are not in entire harmony. It follows, therefore, that anything done at the legal home of the corporation, under the authority of such laws, which discharges it from liability there, discharges it everywhere."  ,

In the case last referred to the rights of the creditors were held to have been merged in a general scheme, in which the public, the creditors, and the shareholders were all interested, for substituting a bonded security for the mortgage indebtedness of an embarrassed railroad, which was legalized by a legislative act of the Dominion parliament; and the defendants in error, who were citizens of the United States, were held bound by the arrangement, and it was also held that their actions could not be maintained. At page 539, 109 U. S., and page 371, 3 Sup. Ct., it is said the arrangement is in entire harmony with the spirit of bankrupt law, the binding force of which, upon those who are subject to the jurisdiction, is recognized by all civilized nations; and continuing:

"It is not in conflict with the constitution of the United States, which, although prohibiting states passing laws impairing the obligation of contracts, allows congress 'to establish * * * uniform laws on the subject of bankruptcy throughout the United States.' Unless all parties in interest, wherever they reside, can be bound by the arrangement which it is sought to have legalized, the scheme may fail. All home creditors can be bound. What is needed is to bind those who are abroad. Under these circumstances, the true spirit of international comity requires that schemes of this character, legalized at home, should be recognized in other countries."

The Minnesota statute (section 5911) provides for calling in all the creditors, and the creditors have by contract submitted their rights to the operation of such provision of the law of the corporate domicile. Proceedings were had in the home court to that end. Therefore, by virtue of the law of Minnesota and the insolvency proceedings in that state, the court and its proceedings were subrogated to the rights and interests of all the creditors, and their right to sue stockholders, if an independent right to sue ever existed under this statute, was, at least for the time being, merged or suspended by operation of the law which involved their interest in such proceedings. See Cushing v. Perot, 175 Pa. St. 66, 74, 77, 34 Atl. 447.

And it follows that, unless the principle of comity, administered upon equitable and legal principles, is broad enough to afford relief extraterritorially to a receiver representing the interests of creditors by appointment in the home proceeding, the right must stand without a practical remedy,—in fact, without any remedy, except as against stockholders residing in the corporate domicile.

Here is a case where it must be conceded by all that the original idea was a superadded stockholders' liability for the better security of the public. There was a community of interests between the lo-

cal stockholders and those outside the state of Minnesota. There would therefore seem to be no inequity in holding the outside stockholders to the same responsibility as the local stockholders, and sound public policy, as well as equity, requires that it should be done. They were all engaged in the same enterprise, their interests were the same, and the only difference in. their standing, and the only reason why one set should pay and the others not, is that of state lines. If this is an effective bar, the nonresident stockholders would be in the corporation with their associates to help divide the profits, and out of the corporation and away from their associates so far as the assumed obligation to the public is concerned.

When you get a liability and can found a recovery upon grounds of substantial equity, justice requires it should be done. The court should find a way to do right and equity rather than a way not to do right and equity; hence we should look to the substance of the remedy intended, rather than to the technical meaning of special names given to forms of remedy. It is of little consequence whether the person designated as the instrument or conduit through which equity runs from the court to the stockholders, and from recovery from the stockholders to the creditors, is called a receiver, an agent, a trustee, or an assignee. If some legal and equitable means of recovery was intended and reasonably described, and the statutory agency called a "receiver" is a convenient, safe, and reasonable agency to that end, it is of little consequence whether his duties here, as to the newly-created statutory right, are precisely those which have been heretofore exercised and discharged by the ordinary common-law or equity receiver; provided, of course, he may be said to fairly represent the legal and equitable idea intended by the statute. If a receiver, or this agency for this purpose, answers the statute, and the name does not offend the general law to such extent that the manifest intended statutory relief should be denied, the action should be upheld in his name for the benefit of the creditors. It is apparent that a rule which would permit the rights of 700 creditors, scattered throughout the United States, each interested pro rata in the individual liability of every stockholder, to be subrogated to a single person as the representative of the multifarious interests, would be a more convenient rule for enforcing the statute in question than a rule requiring a joinder of all the creditors as plaintiffs. The qualification and the bond required in the parent proceeding, and the nature of the function under such circumstances, fairly and reasonably insures payment upon recovery to the parent proceeding, and a distribution by the court having such proceeding in charge according to equity; thus relieving the situation from unnecessary cumbersomeness, and from the dangers and uncertainties incident to recovery by irresponsible and widely-scattered creditors.

All agree that where there is a right or a liability there ought to be a remedy. Some highly respectable authors and authorities suggest that the law is sufficiently elastic and expansive to justify the court in inventing a remedy for the enforcement of a newly-created right for which there is no known remedy; but, if this were assumed to be true, we should be met with the difficulty arising from

contractual relations in this case, where all parties are entitled to have their rights determined by the law and remedy provided by the statute creating the new liability. Still, if contractual relations do exist, as the liability is one which it was intended should be enforced, and one which ought to be upheld on grounds of equity and public policy, ought we not to construe the provisions of the statutory remedy liberally rather than narrowly, to the end that that shall be done which ought to be done, and which it was intended should be done?

All distinctions between law and equity are abolished in Minnesota, and private rights; whether of a legal or equitable nature, may be settled in one action, with ancillary process in aid thereof. Allen v. Walsh, 25 Minn. 543, 556. The proceeding there was essentially an equitable proceeding, which would have been the proper proceeding in the federal courts under similar conditions; and, although no specific remedy is provided by the statute, should we not accept with reasonable liberality the idea that the statute with relation to which the parties contracted, and on which the creditors relied, intended an available remedy, and one which conformed to the requirements of the general rules of equity jurisprudence?

One of the recognized grounds of equity jurisdiction is the avoidance of multiplicity of suits. Enlarged remedies may well be accepted if they fairly effectuate a new purpose and enforce a new liability, and do not offend justice or work inequity. Where a thing is done for the security of the public, there of right ought to be some means of effectuating the security; otherwise, it goes without saying that the security intended by the parties and intended by the law is not afforded. Courts are designed by law as instruments for putting the intentions of parties and of the law into resultant force. Of what security or benefit to creditors is a nonenforceable liability? A security which is not available is no security. Where substantial security is intended, it should not be denied except upon substantial grounds and for substantial reasons. Where a remedy is intended, it should not fail by illiberal construction and interpretation of statutes, nor through technical classification of representative agencies, fairly intended to effectuate justice. The aim of law and justice is to establish and make effectual the intentions of parties, and if, through liberal interpretation by the courts, a remedy can be devised or sustained which accomplishes the aim intended by the parties, a result is reached which the law intended should be reached. If, through technical and illiberal interpretation of statutes, and by strict construction of questions of terminology, a remedy is not found for the enforcement of an intended security, the result reached is contrary to the purpose of the law, and contrary to the implied purpose of the parties when they contracted.

All remedy was either created by statute or invented by courts, under the expansive and elastic principles inherent in the common-law and equity system:

"Quia quando aliquid mandatur, mandatur et omne per quod pervenitur ad illud." Foliamb's Case, 5 Coke, 115a.

"When statutes are made, there are some things which are exempted and foreprized out of the provisions thereof, by the law of reason, though not ex-

pressly mentioned; thus, things for necessity's sake, or to prevent a failure of justice, are excepted out of statutes." "Whenever an act gives anything generally and without any special intention declared, or rationally to be inferred, it gives it always subject to the general control and order of the common law." "Whenever a statute gives or provides anything, the common law provides all necessary remedies and requisites." "Whenever a provision of a statute is general, everything which is necessary to make such provision effectual is supplied by the common law." Potter, Dwar. St. 123.

."Wherever the common law gives a right or prohibits an injury, it also gives a remedy by action." 3 Bl. Comm. 123; Broom, Leg. Max. 193.

"Whenever a power is given by a statute, everything necessary to the making of it effectual or requisite to attain the end is implied." 1 Kent, Comm. 464.

"So, where the law commands a thing to be done, it also provides whatever may be necessary for executing its commands." Stief v. Hart, 1 N. Y. 30.

"The forms of the court are always best used when they are made subservient to the justice of the case." Lord Kenyon in Mara v. Quin, 6 Term R. 1.

"If the plaintiff has a right, he must, of necessity, have a means to vindicate and maintain it, and a remedy, if he is injured in the exercise or enjoyment of it; and, indeed, it is a vain thing to imagine a right without a remedy, for want of right and want of remedy are reciprocal." Chief Justice Holt in Ashby v. White, Ld. Raym. 938, 953.

"When the law commands a thing to be done, it puts in requisition the means of executing its command." "We are not intrusted with the power of infringing substantive rights by withholding the necessary, incident, and appurtenant right of complete remedy; the common-law duty of inventing necessary forms of action, pleadings, trial, judgment, and initial, intermediate, and final process, is as imperative now as it was during the ages in which its performance produced all the common-law procedure that is obsolete and all that is now in use." "The efficacy of process does not depend upon the records giving it a technical name in a dead or living language. There is no law for turning the plaintiffs out of court on a question of terminology." Doe, C. J., in Boody v. Watson, 64 N. H. 162, 9 Atl. 794.

"Sufficient has already been remarked to show that when a statute confers a right and imposes a liability without providing a distinct remedy for its enforcement, the common law will supply the omission by giving to a party an appropriate action, by which his right may be enforced." Mr. Justice Clifford in Morley v. Thayer, 3 Fed. 737, 747.

"A general liability created by statute, without a remedy, may be enforced by an appropriate common-law action." Pollard v. Bailey, 20 Wall. 520, 527; Bank v. Francklyn, 120 U. S. 747, 756, 7 Sup. Ct. 757; Whitman v. Bank, 28 C. C. A. 404, 407, 83 Fed. 288.

It is not necessary, however, in the case under consideration, to resort to this progressive doctrine, for the reason that the statutes of Minnesota, while general in terms, evidently intend a remedy in accordance with the ordinary course of procedure; and, while the general procedure intended is one of an equitable nature, it may well be aided, when justice requires it, by an action at law.

These observations, therefore, as to the inherent principle in the law which enables the court to provide an adequate remedy where none is given, are not intended as strictly applicable to the statute in question or to the rights of the parties in the case under consideration; for it must be assumed and held that the parties contracted with reference to the statute creating the liability and the remedy provided by the statute, as found upon reasonable interpretation. If no specific remedy is expressed or found in the statute, then such remedy as can be fairly said to exist under the general laws of the state creating the corporation and the liability, and such as it can be fairly said the parties contemplated, would be the remedy. It is

not suggested that new forms, processes, or remedies are required by the exigencies of this case, but, upon analogy, if the inherent and impulsive principles of the common law demand the invention of a remedy for the enforcement of a right where no remedy exists, at least a liberal construction of statutes (Chase v. Curtis, 113 U. S. 452, 463, 5 Sup. Ct. 554), which clearly undertake to provide a remedy for the enforcement of a right, would seem not only to be justified upon principle, but demanded by justice, which requires that active force shall be given to the liability which the stockholders assumed, and upon which the creditors and the public had a right to rely. "The object sought to be accomplished exercises a potent influence in determining, not only the principal, but also the minor, provisions of a statute" (Suth. St. Const. § 292); and, "when the language is general or obscure, the court must construe it, and, as far as it can, make it available for carrying out the objects of the legislature and for doing justice between the parties" (Id. § 431; Phillips v. Phillips, L. R. 1 Prob. & Div. 173).

Though not expressly stated in the Minnesota statute, it is reasonable to presume, and it should be held, that the statute presupposed and the parties intended some active force, in the nature of process or remedy, either known or which might be found according to inherent principles in jurisprudence, and which may be reasonably and equitably used for the enforcement of the newly-created statutory right.

The statutory reference to remedy being a very general reference to procedure "as in other cases," it must be accepted as contemplating the growing and expanding fundamental force inherent in the system which was invented, and has its existence, for the express and undeniable purpose of ascertaining, regulating, establishing, and enforcing right through remedy. Law exists for the purposes of remedy. A right or a security, without power of enforcement, is a palpable and self-constituting contradiction. The proposition at once involves a legal and equitable paradox. Denial of remedy and denial of right are alike denials of justice. The decisions, under the drastic provisions of the Kansas statutes, are to the effect that the stockholder is contractually bound by a particular remedy, though anomalous and harsh in its operation. It is less offensive to principles of justice and equity to say that a stockholder is contractually bound by a general statutory reference like that in Minnesota to such procedure as is used in other cases, for the reason that such scope permits of an administration of the right, under such a statute, upon general equitable and legal principles, through the inherent remedial power necessarily incident to the active force of jurisprudence. Thus it is that a statute which contemplates a preliminary accounting, which shall include an ascertainment of all the indebtedness and all the assets, and apply the assets to reduce the indebtedness, and thereby reduce and limit the extent of the liability of the stockholders, and which provides means for the ascertainment of the per centum to which each creditor is entitled, is perhaps the best suited to the justice of a situation presented by statutory liability, for the reason that the end in-

tended is that the burden shall fall upon all alike, and that the benefits shall be equally distributed among all the creditors.

A comprehensive statutory provision like that of Minnesota, which leaves the parties bound by the general legal and equitable remedies which obtain in the state for the enforcement of rights, is more workable and more consonant with justice than statutes which give a right of action to a single creditor against a single stockholder, or such statutes as expressly require a joinder of all the stockholders,—a thing often impossible. Under the first class of statutes, the single creditor may get more than he would be entitled to upon ascertainments, and a stockholder may be compelled to pay more than his just proportion, while other stockholders may go free. Under the other class, it is possible that the express provision requiring joinder of all stockholders places upon the creditors' rights a practical disability, on the ground that they contracted with reference to the liability and remedy specifically expressed by the statute, while under a more general provision, as has been already said, the common legal and equitable remedies, as used and practiced in legal and equitable procedure in the state creating the liability, must be understood as the remedy intended for the establishment and enforcement of the right; and this means in Minnesota, where distinctions between proceedings at law and equity do not exist, that where, from the nature of the right and the character of the inquiry, justice requires it, a proceeding called "a civil action," which in fact is in the nature of a proceeding in equity, may be had in aid of an action at law, or, if justice so requires, that an action at law may be had in aid of such proceeding in the nature of equity.

It must be held that the stockholders contracted with the creditors for a reasonable and equitable interpretation of the remedy; and, again, where remedy is intended, it is a legal and equitable paradox to say that it was intended to be inoperative. It is expressly provided by the statute of Minnesota that, upon complaint of a creditor, "the court shall proceed thereon as in other cases"; and this means a remedy in harmony with principles of law and equity, and such as may be used in other cases in the administration of justice according to the usual course, and such as may be used as a result of the natural and necessary growth and advancement of legal and equitable jurisprudence.

In the case at bar, the statute and the principles of law and equity are broad enough to justify the court in conforming its procedure and processes to such practical uses as justice and equity require, in order to effectuate the intention of the law and the rights and obligations of the parties. The statute of Minnesota intends a comprehensive proceeding in the corporate domicile. It cannot be had elsewhere. As has been said, it intends an ascertainment of all the assets and liabilities; it intends that all parties within reach of the home process—creditors, corporation, and stockholders—shall be brought in; it intends that the per centum shall be for the benefit of all creditors, and that after the assets of the corporation are realized, and the avails of the stockholders' liabilities as well, the two results shall be put together, and the per centum to which each

95 F.—49

creditor is entitled shall be ascertained, and that an equitable pro rata distribution shall be made. See reasoning in Cushing v. Perot, 175 Pa. St. 66, 74, 77, 34 Atl. 447.

The purposes of the statute and of the parties, therefore, cannot be carried out except in the domicile of the corporation, nor there, unless courts of foreign jurisdiction, upon grounds of comity, render such aid by process of an ancillary nature as justice and equity require; and the court of the corporate domicile having the creditors before it for the purposes intended by the Minnesota statute, and their interests subject to the equity proceeding to which, in contemplation of law, they were parties, such court might, in the exercise of inherent and general equity powers, well say: "As you are each and all interested in each and every stockholder's liability, and as ancillary proceedings in the name of 700 creditors who are here asking for relief would be expensive, cumbersome, and inconvenient, and as circuity of action and multiplicity of suits should be avoided, your community of interests must be centered for the time being in a single representative agency, who shall act for all, and who shall give bonds for the faithful performance of the trust, and pay all moneys recovered into the parent court, which is charged by the statute with the duty of recovering and distributing the assets of the corporation, and the avails of the stockholders' liability, for the benefit of you all as creditors." Suppose 700 creditors, from 700 different localities, all interested in the prosecution of a common-law right, should, by proper papers, assign such right to an attorney, an agent, an assignee, or a receiver, for the purposes of enforcement; would there be any doubt as to the right of such representative to prosecute the claim and to recover, upon proper exemplification of his authority? If such authority can be centered and made available in a representative agency by the parties, upon what principle can it be said that the court, having the parties before it and their rights to ascertain and establish, cannot, under a statute which requires the appointment of receivers, create such agency, making it binding upon the creditors for the purposes intended by the statute?

There are two receivers in the Minnesota proceeding. One is a receiver of the corporation affairs in the course of settlement in insolvency; the other is a receiver of dues belonging to the creditors, and is the plaintiff here. The powers, the duties, and the functions of the two are very different. Gluck & B. Rec. (2d Ed.) 183, and cases cited. One, the plaintiff, is appointed for an express and particular purpose,—that of enforcing the personal judgments against the Minnesota stockholders, and of collecting, by such proceedings as may be proper, the liability of nonresident stockholders over whom the Minnesota court expressly disclaims having jurisdiction. He is therefore unlike a receiver who collects assessments from shareholders who have not paid their shares in full, in which case the recovery is for the estate of the corporation; for the liability which he has in charge belongs to the creditors, not to the corporation, and is to be distributed among the creditors pro rata, after applying pro rata the avails or proceeds of the corporate estate administered by the court through the general receiver.

The permanent receiver is the receiver of the corporation, and this plaintiff is the receiver of the dues from stockholders for the benefit of creditors. The avails in both cases, it is true, belong to the creditors, but the means for reaching results are quite different in the two cases. One is to wind up the affairs of the corporation, like Relfe v. Rundle, supra, having nothing to do with stockholders' liabilities to creditors, and to pay the proceeds into court for the benefit of creditors; and the other is to collect statutory dues which belong to creditors,—a new statutory agency, having nothing to do with the affairs of the corporation,—and to pay into court for the benefit of creditors. The receiver of the corporation has no legal right of recovery upon such liability against the stockholders, as such liability is not an asset of the corporation. On the other hand, the receiver of the dues from the stockholders for the benefit of creditors has no right to recover indebtedness to the corporation. So the question is whether the appointment of the special or creditor receiver in the comprehensive Minnesota proceeding is such an appointment as the statute contemplated, and is in accord with the general course of equity and legal procedure in that state.

According to the earlier cases, the receiver, in possession of assets, was in most instances a receiver representing the interests of all parties, as an arm of the court, and for the protection of all, and could not begin adversary litigation, except upon leave of court; and many of the authorities as to the capacity of a receiver to sue spring from such situation, and the lack of capacity resulted in many instances from the fact that he was neither clothed with authority to sue, nor charged with duties which made it proper that he should sue. So it is, as a general rule, with perhaps some exceptions, that the authority must come from a statute or by leave of court.

Section 5906 of the Minnesota Statutes not only expressly authorizes the appointment of receivers, but imperatively provides that the court shall appoint one or more receivers. The comprehensive purpose of the statute was to create a situation which would enable the courts, by appropriate proceedings, to protect all interests in case of insolvency; and it is reasonable to presume that the lawmaking power, contemplating that the interests might be diverse and adversary, and might involve the necessity of different agencies for the care and protection of different interests, intended to confer authority upon the courts to appoint a general receiver of the effects of the corporation, and a special receiver of the dues belonging to the creditors. The present situation demonstrates that such agencies are a necessity; for, as has been said, the assets do not belong to the receiver of the creditors, and the liability of the stockholder does not belong to the receiver of the corporation, and the interests are therefore diverse. The plaintiff is not a common-law receiver, representing the interests of all the parties; he is not a statutory receiver, by express personal or official designation, as in Relfe v. Rundle, supra; he is not a receiver who has leave to sue; but he is a receiver appointed by the court, under an express statutory provision, and an imperative requirement that the court shall appoint, and is exercising the functions which the lawmaking power intended

he should exercise, and is exercising such power under the authority of the statute conferred by the court, not by leave, as in the other class of cases, but by express authority and direction, which charge him with the specific duty. It being the statutory intent to have the separate and distinct interests of the creditors against stockholders represented by a separate and distinct statutory agency, an express provision that "the court shall appoint one or more receivers for the interests of the corporation, and a separate receiver for such interests of the creditors," would have meant no more than the general provision actually employed, that "the court * * * shall appoint one or more receivers," means under fair and reasonable intendment. It is true, as has been said, the function to be exercised by the statutory creditor agency is not that commonly exercised by the ordinary receiver, for he is, in effect and substance, the trustee or agent of a special distinct interest of the creditors; but the intended statutory agency should not fail or become inoperative because, it may be, in a strict technical sense misnamed.

Thus it was that the Minnesota court, having jurisdiction of the interests of all the creditors, the only parties interested in the recovery, appointed the plaintiff for the necessary statutory purpose. This seems a practical, convenient, and just method for the enforcement of this new class of rights in the interests of numerous creditors, which for a long time have been held in troublesome and awkward abeyance; and we think that, upon grounds of comity and justice, it should be upheld, unless the case of Booth v. Clark, 17 How. 322, is a controlling authority upon the question of the capacity of such a receiver to bring and maintain his action extraterritorially, for the purpose intended by the local statute. Booth v. Clark was regarded in this case by the circuit court as a decisive authority against the extraterritorial capacity of the receiver to sue, and it has therefore received our most careful consideration, with the resulting conclusion that it is not applicable to the situation presented by this case.

Booth v. Clark was decided in 1854. It was a case where a receiver was appointed for the benefit of one or more creditors, to the exclusion of others. The receiver was appointed under a statute, but not for a comprehensive purpose, or by virtue of a statute enacted for a comprehensive adjustment of equitable affairs, involving extraterritorial necessities, as in the present case; and the decision is based upon the ground, among others, as stated at page 331, that the cases of the state of New York confine such a receiver's right of action to that state, instead of its being intended, as in this case, by the lawmaking power of the state of Minnesota, to confer upon the receiver or statutory agency the capacity to sue beyond the limits of the state lines. An examination of the reasoning presented by Mr. Justice Wayne differentiates the situation there presented from the one presented to us by the case at bar; and, to illustrate, it is there said (page 331), in reference to the receiver, "When appointed, very little discretion is allowed to him, for he must apply to the court for liberty to bring or defend actions," instead, as in this case, of being appointed for the express purpose of bringing actions, and

where the plaintiff by virtue of such express authority brings his suit, wherein he sets himself up "as receiver for the collection and enforcement of the liability of stockholders of the Northwestern Guaranty Loan Company, insolvent, in an action of contract." Again, it is there said: "A receiver is an indifferent person between parties, appointed by the court to receive the rents, issues, or profits of land or other thing in question in this court, pending the suit, where it does not seem reasonable to the court that either party should do it,"—while in the case at bar, and as an incident to the parent proceeding in Minnesota, the receiver is not an indifferent person between the parties, but appointed for the purpose of probable adversary litigation. Again: "The receiver is but the creature of the court; he has no powers except such as are conferred upon him by the order of his appointment and the course and practice of the court,"—then following with an exception which is apparently sufficiently broad to include the receivership question before us in the present case: "Unless where he is appointed under the statute of New York directing proceedings against corporations, and then he is a standing assignee, vested with nearly all the powers and authority of an assignee of an insolvent debtor." Again, it is said: "We do not find anything in the cases in the New York Reports showing the receiver's right to represent the creditor or creditors of the debtor in a foreign jurisdiction,"—while here the receivership was expressly designed by the Minnesota statute and by the Minnesota court to represent the creditor interests, everywhere, in foreign jurisdictions and in the home forum as well. Again, speaking of the rule of comity as giving the right to sue, it is said (page 337): "That comity has not yet reached our courts. We do not know why it should do so, so long as we have no national bankrupt laws,"—thus intimating that, upon the creation of national or uniform insolvency laws, the comity should exist as it does now in respect to insolvency laws. Cole v. Cunningham, 133 U. S. 107, 126, 10 Sup. Ct. 269; Reynolds v. Alden, 136 U. S. 348, 10 Sup. Ct. 843. Again, in Booth v. Clark, in speaking of the grounds of the decision: "The courts of the United States will not subject their citizens to the inconvenience of seeking their dividends abroad, when they can have the means to satisfy them under their own control,"—while in the case at bar there are no interests of creditors which, in a situation like this, can be satisfied outside of the Minnesota proceeding, where the interests of the creditors are all centered, and require that this action should be maintained on the ground of comity.

But what is more significant than anything that can be said in respect to the inapplicability of this authority to the present situation, and the question which we are now considering, is the reasoning of Mr. Justice Swayne, some 20 years later, wherein he points out that receivership functions are necessarily and continually broadening. In Davis v. Gray, 16 Wall. 203, 219, the learned justice says:

"This bill is auxiliary to the original suit. It is analogous to a petition by a receiver to the court to protect his possession from disturbance, or the property in his charge from threatened injury or destruction. No title in the receiver is necessary to warrant such an application, or the administration by the

court of the proper remedy. There can be no valid objection to the receiver here in analogy to that proceeding maintaining this suit. In the progress and growth of equity jurisdiction, it has become usual to clothe such officers with much larger powers than were formerly conferred. In some of the states they are by statutes charged with the duty of settling the affairs of certain corporations when insolvent, and are authorized expressly to sue in their own names. It is not unusual for courts of equity to put them in the charge of the railroads of companies which have fallen into financial embarrassment, and to require them to operate such roads until the difficulties are removed or such arrangements are made that the roads can be sold with the least sacrifice of the interest of those concerned. In all such cases the receiver is the right arm of the jurisdiction invoked."

And the further paragraph, which is especially significant in respect to the question before us for decision:

"As regards the statutes, we see no reason why a court of equity, in the exercise of its undoubted authority, may not accomplish all the best results intended to be secured by such legislation, without its aid."

In Relfe v. Rundle, 103 U. S. 222, 225, which is a direct authority to the point that a statutory receiver may sue extraterritorially, Chief Justice Waite, recognizing the general rule that administrators and common-law court receivers are not generally authorized to sue in another jurisdiction, states an exception which is apparently broad enough to include the Minnesota receiver who brings this suit, for he says: "We are aware that, except by virtue of some statutory authority, an administrator appointed in one state cannot generally sue in another, and that a receiver appointed by a state court has no extraterritorial power." Then he proceeds to further limit or qualify the general rule by saying: "But a corporation is the creature of legislation, and may be endowed with such power as its creator sees fit to give. Necessarily, it must act through agents, and the state which creates it may say who those agents shall be." It is evident that the first part of the paragraph refers to administrators and receivers in respect to private and individual affairs, in contradistinction to corporate affairs; and, as to this class of receivers, he states the rule as a general rule, for he says, "cannot generally sue in another," etc.,—thus qualifying the general rule in favor of a comity which, in recognition of justice and the imperative necessity of a situation, or the evident purpose of the state creating the right, might permit it to be done.

Again, in an exceedingly able and interesting opinion in Parsons v. Insurance Co., 31 Fed. 305, a careful analysis of Booth v. Clark is made by Judge Shiras in the Iowa district, and it was held not applicable to a suit in the name of the receiver of a Connecticut corporation appointed by a Connecticut court. In that case a receiver was also appointed in Iowa, it being claimed that Iowa creditors had a superior right to the Iowa interests, and that a foreign receiver did not control assets outside the state where he was appointed; and it was held that, as the Connecticut statutes provided for receivers, it was part of the contract with policy holders that, in case of insolvency, such receiver should marshal all the assets, and therefore that his powers were not limited as those of a receiver usually are. In the well-considered case of Hanson v. Davison by the Minnesota supreme court, 76 N. W. 254, 256, the right of the class

of receivers like the one in question to sue is recognized, with a statement of the purpose and policy of the state that the right should extend extraterritorially. See, also, Allen v. Walsh, 25 Minn. 543, 555.

The case of Hazard v. Durant (decided in the Massachusetts district) 19 Fed. 471, was a bill in equity by a commissioner appointed by a Rhode Island court under its common-law authority, and did not involve, so far as we can see, any statutory corporate or insolvency considerations, and therefore stands upon less applicable ground than Booth v. Clark.

We are aware of the general rule that a receiver shall not sue in his own name, but in that of the party whom he represents; but there are exceptions to this rule, and one exception is where the rule of convenience requires that he should sue in his own name as receiver, another is where the statutory purpose contemplates it, and another where the express authority from the court authorizes and directs it; and it would seem that the plaintiff is within all the exceptions to the general rule which have been stated, for it was clearly intended in this instance that the suit should be instituted and maintained by the receiver in his own name, rather than in the names of the diversely scattered 600 or 700 creditors whose interests he represents. Whether a receiver shall or shall not maintain an action extraterritorially is not a question of absolute right. A receiver does not possess the absolute right to sue in a foreign jurisdiction; neither does an absolute right exist on behalf of a defendant that he shall not sue. Under our system of territorial and state divisions, and the resulting quasi independent judicial systems, there is and can be no imperative and absolute rule on the subject. If this action at law is maintained extraterritorially in favor of a receiver, in aid of a parent proceeding in Minnesota, it is upon wholesome grounds of public policy, and of justice and comity, and by reason of what may be called a permissive rule of right, based upon grounds of such policy, comity, and justice. As such a rule would operate in the direction of right and equity, and in the direction of convenience, and would effectuate the purposes of justice, we think it should be held to exist as an inherent necessity in our system of government. Therefore it results that the plaintiff should be permitted to maintain his action extraterritorially for the enforcement of the stockholders' liability, by virtue of statutory authority conferred upon him by the lawmaking power of Minnesota through the instrumentality of its courts, which it clothed with the authority and charged with the duty of appointing receivers, and giving life and force to the statutory security which it created in the interests of the general public.

It was intended that the general provision of the Minnesota statute as to receivers should be aided and made effective by the incidental and necessary exercise of the general common-law and equity powers inherent in the courts of general jurisdiction in that state, and the fact that such receivership provision is so aided, in furtherance of the statutory purpose, does not render the capacity or authority of the contemplated statutory receiver less potential, in re-

spect to the intended statutory purpose and function, than the capacity and authority which would result from express statutory creation by name, or by official designation, as in Relfe v. Rundle, supra, where the legislature of Missouri, by a general law, designated the superintendent of the insurance department for receivership and successorship purposes under certain circumstances, which meant, of course, whoever might happen to be an incumbent of such office when proceedings should be instituted. In this case, the Minnesota legislature delegates the duty and the power to appoint to a court of general jurisdiction, with the imperative injunction that the court, as an instrument of the law, shall act for the lawmaking power, the public, and the parties in that respect and for the purposes intended. In neither instance does the statute, by strict operation of its own function, make a particular personal designation of a receiver. In one instance it is the person whom the executive happens to appoint, and in the other it is the person whom the court happens to appoint, and thus, in each instance, the will of the lawmaking power is put into active force by another branch of the state government.

Moreover, it is difficult to see why the same results might not be reached, where a situation requires it, through the general equity powers of the parent court and actions at law in aid thereof on grounds of comity, without the statutory aid which results from a statutory receivership authorization, as said, in effect, by Mr. Justice Swayne in Davis v. Gray, 16 Wall. 203, 220, when principles of comity were not as generally recognized as now; but this we need not decide.

Judge Craig, speaking for the supreme court of Illinois, in Bell v. Farwell (decided a few weeks ago) 52 N. E. 346, 349, adopts and gives expression to the idea, so often expressed in judicial opinion as to become axiomatic. He says:

"The stockholders offer to the public to be liable as a corporation to the extent of the capital invested in the corporation, and they agree to become liable individually to an amount specified in the act of incorporation. Persons who give credit to the corporation do so upon the faith of the personal liability of the stockholders."

And in the very recent case of Bank v. Ellis, 172 Mass. 39, 47, 51 N. E. 207, 211, Chief Justice Field, speaking for the supreme court of Massachusetts, significantly says:

"It certainly concerns the due administration of justice that all stockholders, wherever they reside, should be compelled, by proceedings somewhere, to perform the statutory obligations towards creditors of the corporation which they have assumed by becoming stockholders."

As a result, and upon the grounds stated, the conclusion is that the receiver should be treated as entitled to maintain his action on the ground and for the purpose stated, and therefore the following judgment is entered in this court: The judgment of the circuit court is set aside, and the case remanded to that court for a new trial, and for further proceedings not inconsistent with the views herein expressed, the plaintiff in error to recover costs in this court.

WEBB, District Judge. I concur in the foregoing opinion and judgment.

COLT, Circuit Judge (dissenting). This is an action at law brought in the circuit court of the United States for the district of Massachusetts by William E. Hale, receiver, against Henry C. Hardon, a citizen of Massachusetts, to enforce his double liability as stockholder in the Northwestern Guaranty Loan Company, a corporation created under the laws of the state of Minnesota. The company was adjudged insolvent in May, 1893, and a general receiver appointed, under the laws of Minnesota. In November, 1893, Arthur L. Rogers, in behalf of himself and all other creditors, brought suit against the corporation, its receiver and its stockholders, for the purpose of enforcing the superadded statutory liability of the stockholders, under chapter 76, Gen. St. Minn. 1894. To this bill of complaint the corporation and its receiver made no answer, and were declared in default. The defendant, Hardon, was never made a party to that suit by the service of any process or notice upon him. In that suit the court proceeded to ascertain the amount of the debts and assets of the corporation, and entered judgment against the resident stockholders over whom it had acquired jurisdiction by service of process, and against the corporation for the amount of its indebtedness. The plaintiff, Hale, was appointed special receiver by the court to collect these judgments, and for the further purpose of enforcing the liability of nonresident stockholders "against whom no personal judgment herein has been ordered," by instituting "such actions or proceedings in foreign jurisdictions as may be necessary or appropriate to this end." Hence the receiver has brought this present action at law, demanding judgment against the defendant in the sum of $17,000. It is admitted that the defendant was the owner of 170 shares of stock in the corporation at the time it was adjudged insolvent.

Judge Putnam in the court below held (89 Fed. 289): "First, that the proceeding [in Minnesota] in which this plaintiff was appointed a so-called receiver is void so far as this defendant is concerned; and, second, that the plaintiff is not of the class entitled to maintain a suit at law in a jurisdiction foreign to that which vested him with his office." With these conclusions I agree. The double or superadded liability of stockholders to creditors for corporate debts is always a creature of statute; it does not exist at common law. Where a right is created by statute, and a remedy for its enforcement is provided by statute, the remedy is "exclusive of all others."

In the federal courts this rule has been authoritatively established by the supreme court in Pollard v. Bailey, 20 Wall. 520, 527; Bank v. Francklyn, 120 U. S. 747, 756, 758, 7 Sup. Ct. 757, 762. In the latter case the court, speaking through Mr. Justice Gray, said:

"In the leading case of Pollard v. Bailey, 20 Wall. 520, under a statute of the state of Alabama incorporating a bank, and providing in one section that the stockholders should 'be bound respectively for all the debts of the bank in proportion to their stock holden therein,' and in other sections that they might be charged by bill in equity, it was held that the remedy prescribed in these sections was the only one, and a creditor of the bank could not maintain an

action at law against the stockholders in the circuit court of the United States; and the chief justice, in delivering judgment, affirmed the following principles, which have been constantly adhered to in subsequent cases: 'The individual liability of stockholders in a corporation for the payment of its debts is always a creature of statute. At common law it does not exist. The statute which creates it may also declare the purposes of its creation, and provide for the manner of its enforcement.' 'The ·liability and the remedy were created by the same statute. This being so, the remedy provided is exclusive of all others. A general liability created by statute, without a remedy, may be enforced by an appropriate common-law action. But, where the provision for the liability is coupled with a provision for a special remedy, that remedy, and that alone, must be employed.' 20 Wall. 526, 527. * * * In all the diversity of opinion in the courts of the different states, upon the question how far a liability, imposed upon stockholders in a corporation by the law of the state which creates it, can be pursued in a court held beyond the limits of that state, no case has been found in which such a liability has been enforced by any court, without a compliance with the conditions applicable to it under the legislative acts and judicial decisions of the state which creates the corporation and imposes the liability. To hold that it could be enforced without such compliance would be to subject stockholders residing out of the state·to a greater burden than domestic stockholders."

The Minnesota constitution (section 3, art. 10) declares the liability of each stockholder "to the amount of stock held or owned by him," and chapter 76 of the General Statutes of 1894 provides the remedy. The provisions of chapter 76 are as follows:

"Sec. 5905. Whenever any creditor of a corporation seeks.to charge the directors, trustees, or other superintending officers of such corporation, or the stockholders thereof, on account of any liability created by law, he may file his complaint for that purpose in any district court which possesses jurisdiction to enforce such liability.

"Sec. 5906. The court shall proceed thereon, as in other cases, and, when necessary, shall cause an account to be taken of the property and 'debts due to and from such corporation, and shall appoint one or more receivers.

"Sec. 5907. If, on the coming in of the answer or upon the taking of any such account, it appears that such corporation is insolvent, and that it has no property or effects to satisfy such creditors, the court may proceed, without appointing any receiver, to ascertain the respective liabilities of such directors and stockholders, and enforce the same by its judgment, as in other cases.

"Sec. 5908. Upon a final judgment in any such action to restrain a corporation or against directors or stockholders, the court shall cause a just and fair distribution of the property of such corporation and of the proceeds thereof to be made among its creditors.

"Sec. 5909. In all cases in which the directors or other officers of a corporation, or the stockholders thereof, are made parties to an action in which a judgment is rendered, if the property of such corporation is insufficient to discharge its debts, the court shall proceed to compel each stockholder to pay in the amount due and remaining unpaid on the shares of stock held by him, or so much thereof as is necessary to satisfy the debts of the company.

"Sec. 5910. If the debts of the company remain unsatisfied, the court shall proceed to ascertain the respective liabilities of the directors or other officers and of the stockholders, and to adjudge the amount payable by each, and enforce the judgment, as in other cases.

"Sec. 5911. Whenever any action is brought against any corporation, its directors or other superintending officers, or stockholders, according to the provisions of this chapter, the court, whenever it appears necessary or proper, may order notice to be published, in such a manner as it shall direct, requiring all the creditors of such corporation to exhibit their claims and become parties to the action, within a reasonable time, not less than six months from the first publication of such order, and, in default thereof, to be precluded from all benefit of the judgment which shall be rendered in such an action, and from any distribution which shall be made under such judgment."

The remedy provided by this chapter has frequently come before the state court for judicial determination. The leading case on this subject is Allen v. Walsh. 25 Minn. 543, decided in 1879. That was a suit by a single creditor of an insolvent bank against a single stockholder to enforce his statutory liability. In its opinion the court, at page 551 and following, said:

"The objection of a defect of parties, which is raised by the demurrer, seems, however, to be well taken. The complainant shows that the Marine Bank derives its corporate existence from the provisions of General Statutes (chapter 33); that it was insolvent when this action was commenced, having theretofore made a general assignment for the benefit of creditors; and that there were other stockholders beside the defendant, who were also individually liable, under the statute, for the corporate debts and demands in suit. The demurrer, therefore, distinctly presents. and for the first time in this court, the question whether a creditor of an insolvent bank, upon such a state of facts, and against an objection of this kind, can enforce his claims against one of the stockholders without joining the rest. and also all other parties having any interest in the subject of the controversy, in order that their respective interests may be fully and finally adjudicated and settled in the action. The right determination of this question depends upon the nature of the liability, and the policy of the law in respect to its enforcement, as indicated by the statutes relating to the subject. The liability declared on is purely a statutory one. It arose out of no contract between the parties, other than that implied by the statute, and is for no debt personally contracted by the defendant, either as principal or surety. It exists wholly by force of the provisions of the statute which created it, and which alone determines its characteristics and incidents. As further indicating the legislative intention upon this subject, the General Statutes of 1866, which contain the statutory provisions upon banking and the individual liability of stockholders, also provide a special and adequate remedy for enforcing the liability, closing up the affairs of the bank in case of insolvency, and for the final adjustment of the rights of all the parties having any interest in the matter. Gen. St. c. 76. This chapter applies to all corporations and associations having any corporate rights. It provides in terms: 'Whenever any creditor of a corporation seeks to charge its stockholders on account of any liability created by law, he may file his complaint for that purpose in any district court which possesses jurisdiction, to enforce such liability.' Authority is given in such action, whenever necessary, to take an account of the property and debts due to and from the corporation, to appoint one or more receivers to collect and convert into money the corporate demands and property, and make just and fair distribution of the proceeds among its creditors, and, in case its assets prove insufficient to satisfy its debts, the respective liabilities of the stockholders are to be ascertained, and the amount payable from each is to be adjudged, and its payment enforced, as in other cases. Provision is also made for giving notice to all the creditors of the corporation by publication. requiring them to exhibit their claims and become parties to the action within a reasonable time. not less than six months, or to be precluded from any benefits in the distribution which may be made under the judgment in the action. Gen. St. c. 76, §§ 17–23. It is reasonable to suppose that the legislature intended by these sections to provide an efficient and sole remedy for enforcing payment of the debts of an insolvent corporation out of the individual liability of its stockholders; for the rule is well settled that, when a statute which creates a right also prescribes an adequate remedy, the latter is to be taken as the exclusive one. City of Faribault v. Misener, 20 Minn. 396 (Gil. 347); Sedg. Const. Law (2d Ed.) 344. The chapter which gives this remedy forms a part of the General Statutes. which were adopted in 1866, and which contain the enactment that creates the statutory liability, and therefore the rule referred to is fairly applicable. It is obvious, from an examination of these sections of chapter 76. that the remedy they provide contemplates a single action, in which all persons having or claiming any interest in the subject of the action shall be joined or properly represented, and their respective rights, equities, and liabilities finally settled and determined. This accords with the general policy of the law as it has existed in this state since 1853."

In Johnson v. Fischer, 30 Minn. 173, 176, 14 N. W. 799, 800, the court, following the construction of chapter 76 laid down in Allen v. Walsh, said:

"This statute was construed in Allen v. Walsh, 25 Minn. 543, as prescribing an action in the nature of an equitable suit, in which all persons interested in the subject of the action should be joined or properly represented. It was further held in that case, as one of the grounds of the decision, that the remedy so provided by statute was the exclusive remedy for enforcing the statutory liability of stockholders."

In Minneapolis Baseball Co. v. City Bank, 66 Minn. 441, 443, 69 N. W. 331, 332, the court said:

"In the case of Allen v. Walsh, 25 Minn. 543, it was held that the stockholders' liability was for the equal benefit of all creditors, and all had an equal right to enforce it; and that Gen. St. c. 76, provided an efficient and sole remedy for such enforcement, in a single action in which all persons interested should be joined, and their respective rights, equities, and liabilities finally settled and determined. This case was followed in Johnson v. Fischer, 30 Minn. 173, 14 N. W. 799, wherein it was held that the liability could only be enforced by or on behalf of all creditors, and against all of the stockholders upon whom the liability rested."

The nature of the statutory remedy, as laid down in Allen v. Walsh and subsequent cases, and as showing that it involves a full and final accounting between all parties in interest, is made clear from the case of Harper v. Carroll, 66 Minn. 487, 69 N. W. 610, 1069, decided in 1896. In that case the questions arising under the statutory remedy were exhaustively considered, and the following, among other, propositions enunciated:

"In an action under the General Statutes of 1894 (chapter 76), to enforce the double liability of the stockholders of an insolvent corporation, the creditors are entitled to a judgment against each stockholder for the full amount of his statutory liability, even though the aggregate amount of this judgment exceeds the aggregate amount of all the corporate indebtedness and costs and expenses of the action to be satisfied by such judgment."

"Where the aggregate amount of the judgment so exceeds the aggregate amount to be satisfied by the same, execution should not be issued against some or all of the stockholders for the full amount of the judgment against each, but the judgment should, by its terms, provide for issuing successive executions on the order of the court, at first for each stockholder's pro rata share of such indebtedness and expenses, and then for subsequent successive executions for such additional pro rata amounts or assessments as may be found necessary by reason of the failure to collect from stockholders found to be insolvent in attempting to satisfy the prior execution; and, when such indebtedness and expenses are paid in full, the balance of the judgment against those stockholders paying their full share of the same shall be satisfied. Execution should be issued on the judgment accordingly."

"When a stockholder is also a creditor, it is proper to order judgment against him for the full amount of his statutory liability, the same as against other stockholders, to declare the judgment against him a lien on the amount due him, and to order him to pay all assessments on such judgment until the court is fully satisfied that the dividend coming to him will fully pay the balance due from him on any further assessments on the judgment against him, when the collection of such further assessments may be stayed, and on distribution the dividend due him may be set off against such assessments."

"When, four days before the trial, the plaintiff discovered that nonresident stockholders, over whose persons the court did not and could not acquire jurisdiction, had property within this state, and on the trial the defendant stockholders objected to entry of judgment until the court should acquire jurisdiction over this property by attachment, held, at that late day, these defendants were

not entitled to delay the trial or other proceedings in order to make this property contribute to the payment of the corporate debts; but the court might, in its discretion, compel the plaintiff or other creditors to attach and proceed to condemn the property, and, if condemned too late to contribute directly, it or its proceeds might, after the creditors were paid in full, be applied to reimburse those stockholders who had paid more than their share."

"The stockholders' liability is several, not joint; and a judgment against only a part of the stockholders, within the jurisdiction, does not have the effect of releasing the others. While such liability is several, it produces only a limited fund, which belongs to all the creditors as tenants in common, and must be enforced in equity."

"It is proper to provide in the judgment that, after the receiver has collected in full or has exhausted all the collectible liability, a judgment of contribution may be entered in favor of those who have paid more than their share, and against those who have paid less."

In contemplating the scope and character of the remedy for the enforcement of the superadded liability of stockholders provided in chapter 76, as construed by the highest court of the state in Allen v. Walsh and Harper v. Carroll, how is it possible to adjudicate upon the rights, equities, and liability of an absent stockholder, who was never made a party to the original proceeding, in an action at law in a foreign jurisdiction?

Such was the remedy, and the exclusive remedy, for the enforcement of the stockholders' double liability, under the Minnesota statute, as interpreted by the highest court of the state, down to 1896. This is three years subsequent to the time the corporation in which the defendant was a stockholder was adjudged insolvent, and the suit of Rogers against the stockholders was begun in the state court. Down to this time the state court had uniformly held that the right of creditors to enforce the liability of stockholders for corporate debts is created by statute; that the statute provides the exclusive remedy, which is a single action in the nature of an equitable proceeding on behalf of all the creditors, and against all the stockholders, wherein the rights of all parties having any interest may be finally adjusted; that, if there were nonresident stockholders over whom the court could acquire no jurisdiction, it would proceed with the accounting against the part of the stockholders within its jurisdiction. The court had never held that the proceeding under chapter 76 was binding upon nonresident stockholders, over whom it acquired no jurisdiction, for any purpose whatever.

In all the numerous cases which have arisen under chapter 76 concerning the enforcement of stockholders' liability, it does not appear, until the case of Rogers against the stockholders of the Northwestern Guaranty Loan Company, that the state court ever authorized the receiver to bring suit in a foreign jurisdiction against a nonresident stockholder, or that an action at law like the present suit was ever before instituted.

The authority upon which this suit is based, and which has been mainly followed in the reasoning and conclusion of the majority of the court, is the language used in the opinion of the supreme court of Minnesota in the recent case of Hanson v. Davison, 76 N. W. 254, decided July 26, 1898, by a divided court. It is necessary to analyze that case with some care. The suit of Hanson v. Davison

grew out of the parent suit of Harper v. Carroll, supra. In the latter case, it was found that a nonresident stockholder, Davison, had property within the jurisdiction of the court, and the court thereupon authorized the plaintiff, Hanson, who was an intervening creditor in the Carroll suit, to bring a separate action against Davison to reach the property. The district court directed judgment for defendant, and this judgment was affirmed by the supreme court upon the ground that, where "the property of such [nonresident] stockholder is found within the jurisdiction of the court, either before or after judgment in the original action, a separate suit against him to reach the property is neither necessary nor proper, for it can be attached or sequestered in the original action. Such is this case." The question before the court for determination in Hanson v. Davison was whether a separate action would lie against a nonresident stockholder for the purpose of reaching his property within the state, and the court held that it would not, because it could be attached and sequestered in the original suit. The original suit in that case was Harper v. Carroll, where, as we have seen, the court fully considered the principles governing a final settlement of all the rights and equities arising between the creditors and stockholders. In the opinion, however, in Hanson v. Davison, the majority of the court gave a construction, respecting the remedy in case of a nonresident stockholder under the Minnesota statute, which was certainly new, and, it would seem, in conflict with former decisions of the court. That portion of the opinion may be summarized as follows: The remedy for enforcing the liability must, in the first instance, from the nature of the liability, be an equitable action. Chapter 76 indicates and regulates, to some extent, the remedy, leaving to the court the duty of making the remedy effectual by an application of the principles of equitable procedure. This statute prescribes the exclusive remedy only to the extent that an equitable action of the character therein indicated must be first instituted for the enforcement of the liability of stockholders. Such an action, though provided by statute, is essentially an equitable proceeding, and the rules of equity are to be followed, unless inconsistent with the statute. If chapter 76 were repealed, equity would find an adequate remedy for the enforcement of the liability. There is nothing in the statute which justifies the conclusion that, if a stockholder's liability is not enforced in the original action because he is a nonresident, an ancillary action may not be brought against him alone after the amount for which stockholders are individually liable has been determined in the original action. Equitable considerations and the statute require that an action of the character prescribed by chapter 76 be brought by and on behalf of all the creditors, and against the corporation and all of the stockholders of whom the court has jurisdiction, to determine the amount remaining due to such creditors, respectively, after the assets of the corporation have been exhausted; thereby providing a basis for determining the extent of the liability of the respective stockholders. The judgment in such original action, determining the amount of the corporate debts remaining unpaid, is binding on all of the stock-

holders, whether parties to the action or not, unless impeached for fraud. A judgment against the corporation is, in effect, a judgment against the stockholders in their corporate capacity. They are represented by the corporation in the action. In principle, there can be no difference in this respect between an action to enforce an unpaid subscription and one to enforce a stockholder's liability. The action required to be brought by chapter 76 is the original action for the sequestration and distribution of the fund to be derived from the stockholders' liability, and the decree entered therein is a final and conclusive determination of the amount (unless impeached for fraud) for which the stockholders are liable. As the amount and par value of the stock issued and outstanding is a matter of record, and readily proven in any action, there is nothing to prevent the prosecution, after such decree is entered, of an ancillary action in another jurisdiction by the receiver appointed to collect and distribute its funds arising from the stockholders' liability in the original action, or by any other party or person who may be appointed by the court for that purpose, against any stockholder who was not made a party to the original action, to collect from him the amount of his liability on account of the debts of the corporation, for the benefit of all the creditors. The only objection, in justice, such stockholder could make to such a procedure, would be that his right of contribution could not be worked out in such ancillary action. If he were called on to pay only his pro rata share of the deficiency, treating all the stockholders as solvent, the objection would wholly fail; but it would seem that his right to contribution, in case he was required to pay more than his share as between himself and the other stockholders, is subordinate to the equities of the creditors, as he can secure such contribution by appearing in the original action. Judge Canty (who wrote the opinion in Harper v. Carroll) filed a dissenting opinion, in which he said:

"A judgment taken against the corporation while it was a going concern is conclusive against the stockholders. Holland v. Development Co., 65 Minn. 324, 68 N. W. 50. But a judgment in an action commenced after the assets of the corporation have been sequestered in insolvency proceedings is of no effect, as against the stockholders. Danforth v. Chemical Co. (Minn.) 71 N. W. 274; Schrader v. Bank, 133 U. S. 67, 77, 10 Sup. Ct. 238. * * * When the corporation is a going concern, it represents all of its stockholders in defending actions brought against it, and that is the reason why the stockholders are bound by a judgment taken against it at such a time. But, after the corporation goes into liquidation, it ceases to represent its stockholders,—at least, as to their superadded liability. The majority admit this by admitting that all of the stockholders within the jurisdiction are necessary parties to an action to enforce that liability. It is the first time I have ever heard the doctrine laid down by a court that you may neglect to bring in a necessary party to the action, and yet bind him as conclusively by the result as if he had been brought in. It seems to me that this is a most extraordinary doctrine. Neither can I concur in that part of the opinion which holds that there is no difference between a suit against a stockholder for an unpaid subscription and a suit against him on his superadded liability, so far as the conclusiveness of the judgment obtained against the corporation is concerned. * * * The case of Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739, cited by the majority, is merely a case of an assessment on unpaid subscriptions; and the proceeding is upheld on the ground that the debts due the corporation on these subscriptions were corporate assets, and the court had all the power of the corpo-

ration itself to make an ex parte assessment on such subscriptions. Such, also, are the cases of Marson v. Deither, 49 Minn. 423, 52 N. W. 38, and In re Minnehaha Driving Park Ass'n, 53 Minn. 425, 55 N. W. 598; and these assessments were made in proceedings in which the stockholders' superadded liability could not be enforced at all. From these suggestions it will be readily seen that it does not follow at all that, because the judgment against the corporation is conclusive in an action to collect an unpaid subscription, it is conclusive in an action on the stockholders' superadded liability. Neither can I concur in that part of the opinion which assumes to hold that an ancillary action may be maintained in another jurisdiction by the receiver appointed in the original action in this state. This court has several times held that a receiver appointed under chapter 76 has no authority to enforce the stockholders' superadded liability. See Minneapolis Baseball Co. v. City Bank, 66 Minn. 441, 69 N. W. 331; Palmer v. Bank, 65 Minn. 90, 67 N. W. 393. I am unable to see how this court can lay down a rule or edict to govern proceedings in courts of other states contrary to the rule it lays down to govern proceedings in the courts of this state."

The opinion of the majority of the court in Hanson v. Davison concerning the remedy under the Minnesota law for the enforcement of the double liability of stockholders involves the following propositions: First. In such a proceeding, all resident stockholders are necessary parties, and nonresident stockholders are not necessary parties, so far as the determination of the liability of all the stockholders is concerned. Second. The judgment in such original action against the corporation, determining the amount of corporate debts unpaid, is binding on all stockholders, whether parties to the action or not, unless impeached for fraud. Third. As the amount of stock outstanding is a matter of record, there is nothing to prevent the prosecution, after the decree in the original action, of an ancillary suit in another jurisdiction against any stockholder who was not made a party in such action, to collect the amount of his liability already determined in a proceeding in which he was not made a party. Fourth. Such an ancillary action may be brought against any stockholder who was not made a party by the receiver appointed in the original action to collect and distribute the fund arising from the stockholders' liability, or by any other person or party appointed by the court. Fifth. The right of contribution which a stockholder not made a party might have is subordinated to the rights of creditors, and can be secured by his appearance in the original action. Briefly stated, the conclusion of the court was that the remedy provided by chapter 76, supplemented by the application of equitable principles, contemplated two actions: A parent suit, in which the corporation and all resident stockholders are necessary parties, and an ancillary suit brought by a receiver or any other person appointed by the court to collect the stockholders' liability, in a foreign jurisdiction against any nonresident stockholder; that in such ancillary suit it is only necessary to prove that the defendant was a stockholder and the number of shares he owned, which are matters of record. The fundamental objection to this doctrine is that it discriminates in favor of resident stockholders and against nonresident stockholders to such a degree that no rule of comity should permit of its recognition. It makes a resident stockholder a necessary party to the action, and entitles him to be heard on the question which determines his liability, namely, the

ascertainment of the debts and assets of the corporation. It holds the nonresident stockholder is not a necessary party, and that the ascertainment of the amount of his liability in such a suit is binding upon him in his absence. It gives to the resident stockholder, who must be made a party, the right of contribution from other stockholders. It denies any such right to the nonresident stockholder, unless he chooses to appear in the original action. It holds that the resident stockholder, under the Minnesota law, contracted as to one kind of remedy, and the nonresident stockholder as to another kind of remedy. Its effect is "to subject stockholders residing out of the state to a greater burden than domestic stockholders," as stated by the supreme court in Bank v. Francklyn, supra. In substance and effect, though not in form, it renders judgment against a nonresident stockholder for his personal liability in his absence and without a hearing. Supposing there had been no resident stockholders, or a single resident stockholder, and the corporation and its receiver had made default (as in the Rogers suit) in an action brought by creditors to enforce the superadded liability of stockholders under the remedy provided by chapter 76, as expounded in Allen v. Walsh and Harper v. Carroll; could it be said that a judgment against the corporation in such a case would determine the superadded liability of every stockholder under the Minnesota law, unless impeached for fraud? To a doctrine which leads to such results, upon whatever theory of corporate rights and obligations it may be worked out, I cannot assent. If the Minnesota statute, in providing a remedy for the enforcement of the double liability of stockholders, had declared that a suit might first be brought in behalf of all the creditors against the corporation or its receiver for the purpose of ascertaining the amount of corporate debts and assets, and fixing the superadded liability of the stockholders, and that, having made such ascertainment, an ancillary suit might be brought by a receiver appointed by the court to collect and distribute the fund, against any stockholder in any jurisdiction, the case would be different. If such were the statute, it could, at least, be said that all stockholders were placed upon the same plane of equality. But, as we have seen, such is not the Minnesota statute, whether we look at its express language or the uniform interpretation of it by the highest court of the state for many years, although, to maintain the present suit, it would seem that some construction of this character must be adopted. And in this connection it must be borne in mind that this case is to be determined by the remedy provided by the Minnesota statute, and without reference to the special statutes of any other state. The theory upon which it is maintained that the Minnesota proceeding is binding on this defendant with respect to the determination of his liability as stockholder is that the judgment against the corporation in that action, and after it had been adjudged insolvent in a previous proceeding, concludes all the stockholders, whether or not they were made parties. This doctrine was never promulgated by the Minnesota state court, except in the case of Hanson v. Davison, and, so far as shown, no case has been found in which such a doctrine has been even partially rec-

95 F.—50

ognized, unless based upon some special state statute. The answer to this contention is that the Rogers suit in Minnesota was primarily an action brought by creditors against stockholders to enforce their superadded statutory liability. It was not a suit instituted to obtain a judgment against the corporation. The statute provides other forms of remedy for that purpose. Fundamentally and essentially it was a suit to enforce the personal liability of stockholders under the statute. It was instituted for that purpose and no other. It was not a corporate matter. It did not involve a corporate duty. The assets do not belong to the corporation. The receiver of the corporation cannot bring such a suit. The corporation is made a party because, as incident to this remedy, there may be a sequestration of the corporate assets. In re People's Live-Stock Ins. Co., 56 Minn. 180, 57 N. W. 468; Minneapolis Baseball Co. v. City Bank, 66 Minn. 441, 69 N. W. 331; Olson v. Cook, 57 Minn. 552, 59 N. W. 635.

In the case of In re People's Live-Stock Ins. Co., the court (page 185, 56 Minn., and page 470, 57 N. W.) observed: "The constitutional or statutory liability is directly to the creditors. The corporation cannot enforce it. It is no part of its assets."

In Olson v. Cook, in speaking of this remedy, the court (page 559, 57 Minn., and page 637, 59 N. W.) said it is "primarily to enforce that [the stockholders'] liability, but as incident to which there may be a sequestration of the corporate assets."

In support of the position that the Minnesota judgment is binding upon nonresident stockholders who were not made parties to the action, it is contended that the present case is analogous to actions for unpaid subscriptions to stock, like Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739; Glenn v. Liggett, 135 U. S. 533, 10 Sup. Ct. 867; Glenn v. Marbury, 145 U. S. 499, 12 Sup. Ct. 914; and Telegraph Co. v. Purdy, 162 U. S. 329, 16 Sup. Ct. 810. In the Glenn Cases it appeared that by the statute of Virginia the balance of unpaid subscriptions to the stock of a Virginia corporation was payable as called for by the president and directors, and it was held that, as the corporation was a party to a suit in a court of Virginia making a call, it sufficiently represented the stockholders; and that as the suit in the court of Virginia was properly brought, and the court had jurisdiction as to the subject-matter and parties, its adjudication cannot be reviewed or impeached in a collateral suit on the call against a stockholder, brought in another jurisdiction, except for actual fraud. In Hawkins v. Glenn, Mr. Chief Justice Fuller, speaking for the court (page 329, 131 U. S., and page 742, 9 Sup. Ct.), said:

"Under the charter of this company a call [for balance of unpaid subscriptions on stock] could only be made by the president and directors, and was a corporate question merely, and in the situation of the company's affairs it was a duty to make it, failing the discharge of which, by the president and directors, creditors could set the powers of a court of equity in motion to accomplish it."

In such cases the court laid down the rule "that the stockholder is bound by a decree of a court of equity against the corporation in

enforcement of a corporate duty, although not a party as an individual, but only through representation by the company."

The Glenn Cases decided that a decree or "order of assessment" against a corporation, in a suit where the stockholders were not made parties, was binding in a collateral suit against a stockholder for the enforcement of such order, on the ground that it was a corporate matter merely and the carrying out of a corporate duty. In these cases, the assets belonged to the corporation, and the collateral suits were brought by the receiver or assignee of the corporation. These cases differ from a suit brought by creditors to enforce the superadded liability of stockholders under the Minnesota statute, because such suit is not a corporate matter; it is not the duty of the corporation to enforce it; the assets do not belong to the corporation; and neither the corporation nor its receiver could institute such an action. But, even in the case of stock assessments, it is well to notice how far a decree or "order of assessment" against the corporation, in a prior suit in which the stockholders were not made parties, operates as a judgment against a stockholder in a subsequent collateral suit brought by the receiver against a stockholder to enforce the call.

The supreme court, by Mr. Justice Gray, in the latest case of Telegraph Co. v. Purdy, 162 U. S. 329, 336, 337, 16 Sup. Ct. 810, 813, said:

."The order of assessment, whether made by the directors as provided in the contract of subscription, or by the court as the successor in this respect of the directors, was doubtless, unless directly attacked and set aside by appropriate judicial proceedings, conclusive evidence of the necessity for making such an assessment, and to that extent bound every stockholder, without personal notice to him. Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739; Glenn v. Liggett, 135 U. S. 533, 10 Sup. Ct. 867; Glenn v. Marbury, 145 U. S. 499, 12 Sup. Ct. 914. But the order was not, and did not purport to be, a judgment against any one. It did not undertake to determine the question whether any particular stockholder was or was not liable in any amount. It did not merge the cause of action of the company against any stockholder on his contract of subscription, nor deprive him of the right, when sued for an assessment, to rely on any defense which he might have to an action upon that contract."

Further, it is a general rule that, after the assets of a corporation have been sequestered in insolvency proceedings (as in the Rogers suit), a judgment against a corporation is not binding on the stockholders. Schrader v. Bank, 133 U. S. 67, 77, 10 Sup. Ct. 238; Danforth v. Chemical Co. (Minn.) 71 N. W. 274.

In Schrader v. Bank, the corporation was liable as guarantor on certain notes before it went into liquidation, and afterwards judgment was obtained against it. The supreme court held that the judgment was not binding on the stockholders. The court said:

"But as the suit in which that judgment was recovered was not commenced until the 20th of October, 1876, more than three years after the Manufacturers' Bank went into liquidation, the judgment against the corporation was not binding on the stockholders, in the sense that it could not be re-examined."

In Danforth v. Chemical Co., the supreme court of Minnesota held that a judgment against a corporation on default for want of answer, in an action on a contract, which was brought after the corporate property and assets had been sequestered, and a receiver appointed,

under the provisions of Gen. St. 1894, c. 76, for the benefit of all its creditors, is not entitled to be exhibited and allowed as a claim against the estate without further proof of the existence and bona fide character of the claim on which such judgment was predicated.

To summarize: The proceedings in the Minnesota state court are, in my opinion, in no way binding on this defendant for the following reasons: (1) The double liability of the stockholder is wholly statutory. (2) The remedy provided by statute is exclusive. (3) The Minnesota statute contemplates a single action of an equitable nature, in which all the creditors and all the stockholders are parties, and the rights, equities, and liabilities of all parties in interest are finally determined. (4) To hold that the resident stockholders are necessary parties to such action, and the nonresident stockholders are not necessary parties, works an unjust discrimination against the latter, in that it fixes their liability in their absence, and without notice, and excludes the right of contribution from other stockholders. (5) Such a construction of the Minnesota statute amounts, in substance and effect, to rendering judgment against a non-resident stockholder in an action where he was not made a party. (6) Such a construction of the statute prescribes one form of remedy for resident stockholders, and another form of remedy for nonresident stockholders. For a resident stockholder it prescribes an equitable proceeding, in which the rights, equities, and liabilities of all parties in interest may be finally adjudicated; for a nonresident stockholder it prescribes an action at law in a foreign jurisdiction, in which, his superadded liability as stockholder having already been determined in a prior action in his absence, his only defense is to show that he was not a stockholder. (7) A suit brought by creditors to enforce the double liability of stockholders under the Minnesota statute is not analogous to a suit for the assessment of unpaid stock subscriptions, because the latter is a corporate matter merely, involving a corporate duty, where the assets belong to the corporation, and where the liability may be enforced by the corporation or its receiver; whereas, the former is not a corporate matter, involves no corporate duty, the assets are not corporate assets, but a trust fund for the payment of creditors after the corporate assets have been exhausted, and the liability cannot be enforced by the corporation or its receiver. A suit for assessment of unpaid stock subscriptions is primarily and fundamentally a corporate question, while a suit for the superadded liability of stockholders is primarily and fundamentally a question between creditors and stockholders; and while, in the former proceeding, it may properly be said that the corporation represents the stockholders, where a judgment for a call is obtained, in the latter proceeding it cannot be so held, without a violation of the essential and inherent nature of the action. (8) A judgment against a corporation, after insolvency proceedings and the appointment of a receiver, is not binding on the stockholder, and can be inquired into in a proceeding to enforce his superadded liability.

The second question is whether the plaintiff is entitled to maintain this action in a foreign jurisdiction. The plaintiff was appointed

receiver by the Minnesota court in the Rogers suit for collecting and enforcing the judgments in that suit, in behalf of the creditors, against the Minnesota stockholders, and for the purpose of collecting by such proceedings as might be proper, the liability of nonresident stockholders over whom the court had not acquired jurisdiction for the purpose of entering personal judgment. The authority to appoint receivers is derived from section 5906 of chapter 76 of the Minnesota Statutes:

"The court shall proceed thereon, as in other cases, and when necessary, shall cause an account to be taken of the property and debts due to and from such corporation, and shall appoint one or more receivers."

Then follows section 5907:

"If, on the coming in of the answer or upon the taking of any such account, it appears that such corporation is insolvent, and that it has no property or effects to satisfy such creditors, the court may proceed, without appointing any receiver, to ascertain the respective liabilities of such directors and stockholders, and enforce the same by its judgment as in other cases."

The receiver contemplated by section 5906 is a receiver of an insolvent corporation appointed to collect and distribute the "corporate" assets. This is apparent from the following section, which provides that, where there is no corporate property or effects, the court may proceed without appointing any receiver. This is also the construction of the statute by the court in Allen v. Walsh, supra, where it is said:

"Authority is given in such actions, whenever necessary, to take an account of the property and debts due to and from the corporation, to appoint one or more receivers to collect and convert into money the corporate demands and property, and make just and fair distribution of the proceeds among its creditors, and, in case its assets prove insufficient to satisfy its debts, the respective liabilities of the stockholders are to be ascertained, and the amount payable from each is to be adjudged, and its payment enforced as in other cases."

While the court had undoubted authority to appoint the plaintiff receiver for the purpose of enforcing judgment against resident stockholders or for any other matter incident to that litigation, it was under no obligation so to do, since he was not the receiver of corporate assets mentioned in section 5905. He was appointed a so-called "receiver" merely in aid of the court, and to help work out the litigation. He was not the successor of the corporation, as in Relfe v. Rundle, 103 U. S. 222. He was not an assignee or trustee of the property and effects of the corporation, as in Hawkins v. Glenn, supra. He was a mere officer of the courts, or a commissioner, as in Hazard v. Durant, 19 Fed. 471, appointed as an aid to the court.

It was said in the opinion in Hanson v. Davison, supra, that an ancillary suit like the present one may be brought by the receiver appointed to collect and distribute the fund arising from the stockholders' liability, or "by any other parties or persons appointed by the court." And, as a matter of fact, the person directed by the court to bring the ancillary suit in that case against a nonresident stockholder, for the sequestration of his property within the jurisdiction of the court, was not the so-called "receiver" of the fund

derived from the stockholders in the original action of Harper v. Carroll, supra, but one of the intervening creditors in that suit. This shows that the court may appoint any person to bring a suit like the present one, and that the present plaintiff derived no title to this fund under the statute, or by assignment or conveyance; that he is acting merely as an officer or servant of the court; and that his only title is derived from his appointment by the court.

In Relfe v. Rundle, supra, the plaintiff was the person designated by law to take, hold, and dispose of the property of the corporation. Mr. Chief Justice Waite, in the opinion of the court, said:

"Section 6043 of the Revised Statutes of Missouri is as follows: 'Upon the rendition of a final judgment dissolving a company, or declaring it insolvent, all the assets of such company shall vest in fee-simple and absolutely in the superintendent of the insurance department of this state, and his successor or successors in office, who shall hold and dispose of the same for the use and benefit of the creditors and policy-holders of such company, and such other persons as may be interested in said assets.' Relfe is not an officer of the Missouri state court, but the person designated by law to take the property of any dissolved life insurance corporation of that state, and hold and dispose of it in trust for the use and benefit of creditors and other parties interested. The law which clothed him with this trust was, in legal effect, part of the charter of the corporation. He was the statutory successor of the corporation for the purpose of winding up its affairs. As such, he represents the corporation at all times and places in all matters connected with his trust. He is the trustee of an express trust, with all the rights which properly belong to such a position."

In Hawkins v. Glenn, supra, the defendant, Glenn, was the trustee or assignee of the corporation. The corporation, by its deed, first assigned and transferred to three trustees, for the benefit of its creditors, all its property and effects, in trust for the payment of the debts of the company. The creditors brought suit against the trustees and officers of the company. In that suit it was decreed that Glenn be appointed trustee to execute the trusts of the deed of trust in place of the original trustees created by the deed, and it was further ordered that an assessment of 30 per cent. be made upon the stockholders for unpaid subscriptions to stock. Glenn subsequently brought suit in another jurisdiction against a stockholder, the plaintiff in error, Hawkins. It will be observed that Glenn in that case derived title to the property and rights of the corporation through a deed of assignment. In Hawkins v. Glenn the question was not raised as to the right of Glenn to sue in his own name as trustee; but in the subsequent case of Glenn v. Marbury, 145 U. S. 499, 12 Sup. Ct. 914, the court declared that suit would not lie in his own name as trustee by virtue of the authority conferred upon him by the Virginia court, and that a suit instituted in the District of Columbia, where the common law prevails, must be brought in the name of the corporation. In the later case of Telegraph Co. v. Purdy, supra, the suit was brought in the name of the corporation by its receiver. But, aside from this question of procedure, it can hardly be contended that this plaintiff belongs to the class of receivers found in Relfe v. Rundle and Hawkins v. Glenn. As pointed out by the court below, the plaintiff is a mere officer of the court, deriving his powers solely from the court, and

with no title to the fund except such as is conferred upon him by the court. It seems to me established by the supreme court in Booth v. Clark, 17 How. 322, and in this circuit by Hazard v. Durant, 19 Fed. 471, that a receiver of this class cannot, in his own name, maintain a suit in another jurisdiction. In Booth v. Clark a judgment creditor filed a creditors' bill against the debtor in the state of New York, and a receiver was appointed. There came into the receiver's hands a claim against Mexico, which was subsequently paid, and the fund was in the hands of the secretary of the treasury. The receiver obtained authority from the New York court to proceed and collect the fund. Thereupon he filed a bill in the circuit court for the District of Columbia. The debtor, Clark, answered the bill. It was held that a receiver is an officer of the court which appointed him, and that he cannot sue in a foreign jurisdiction for the property of the debtor. The court (pages 330-335) said:

"The leading point in the case is the effect of the proceedings under the last [the creditors' bill] to give a right to the receiver, in virtue of a lien which he claims upon the property of the debtor, to sue for and to recover any part of it, legal or equitable, without the jurisdiction of the state of New York. * * * It is true that the receiver in this case is appointed under a statute of the state of New York, but that only makes him an officer of the court for that state. He is a representative of the court, and may, by its direction, take into his possession every kind of property which may be taken in execution, and also that which is equitable, if of a nature to be reduced into possession. * * * He is an officer of the court; his appointment is provisional. * * * It is the court itself which has the care of the property in dispute. The receiver is but the creature of the court. He has no powers, except such as are conferred upon him by the order of his appointment, and the course and practice of the court. * * * Indeed, whatever may be the receiver's rights, under a creditors' bill, to the possession of the property of the debtor in the state of New York, or the permissions which may be given him to sue for such property, we understand the decisions of that state as confining his action to the state of New York. * * * Our industry has been tasked unsuccessfully to find a case in which a receiver has been permitted to sue in a foreign jurisdiction for the property of the debtor. So far as we can find, it has not been allowed in an English tribunal. Orders have been given in the English chancery for receivers to proceed to execute their function in another jurisdiction, but we are not aware of its ever having been permitted by the tribunal of the last. We think that a receiver has never been recognized by a foreign tribunal as an actor in a suit."

This, the court goes on to say, does not apply to assignees in bankruptcy, with powers, privileges, and duties prescribed by the statute for the collection of the bankrupt's estate for equal distribution among all of his creditors. Speaking of a receiver appointed under the insolvent laws of a state, the court observed at page 338:

"He has no extraterritorial power of official action; none which the court appointing him can confer, with authority to enable him to go into a foreign jurisdiction to take possession of the debtor's property; none which can give him, upon the principle of comity, a privilege to sue in a foreign court or another jurisdiction, as the judgment debtor himself might have done, where his debtor may be amenable to the tribunal which the creditor may seek."

Hazard v. Durant, 19 Fed. 471, was a suit in the circuit court for the district of Massachusetts. It was heard before Judge Lowell and Judge Nelson. In that case suit was brought for certain dividends in the hands of the defendant, by the complainant as commis-

sioner "officially authorized by the Rhode Island court to collect and receive them." In its opinion (page 477) the court said:

"The plaintiff has no interest in them [the dividends] derived by assignment from the shareholders, and no transfer of the shares has ever been made to him by Durant. His claim rests solely upon his appointment as commissioner. Although called a 'commissioner' in the decree, it is evident that his powers and duties are solely those of a receiver. * * * It was decided in the case of Booth v. Clark, 17 How. 322, a decision binding in this court, that a receiver appointed by a court of chancery, being a mere officer and servant of the court appointing him, and having no title to the fund by assignment or conveyance, or other lien or interest than that derived from his appointment, cannot, in his own name, maintain a suit in another jurisdiction to recover the fund, even when expressly authorized by the decree appointing him to bring suits in his own name. This, of itself, is a fatal objection to the suit."

The rule laid down in Booth v. Clark has never been overruled by the supreme court. Whatever modifications of the rule have been recognized have been based upon the special statutes of the state. Parson v. Insurance Co., 31 Fed. 305. There is no provision in the Minnesota statute from which it can be inferred that a receiver, like the plaintiff, appointed by the court to collect the stockholders' liability, is authorized to bring an ancillary suit in a foreign jurisdiction against a nonresident stockholder. For 30 years or more since the statute has been in force it does not appear that the court ever authorized such an action until the Rogers Case, and it seems that this is the first suit of the kind which was ever brought. The doctrine originated, as we have shown, from the language of the court in Hanson v. Davison, decided in 1898. But in that opinion the court does not base such ancillary suit by a receiver on the statute, or previous judicial decisions, but on general equitable principles. It says:

"Chapter 76, Gen. St. 1878, indicates and regulates to some extent the remedy, leaving the court the duty of making the remedy effectual by an application of the principles of equitable procedure. This statute prescribes the exclusive remedy only to the extent that an equitable action of the character therein indicated must be first instituted for the enforcement of the liability of stockholders."

Instead of deriving its authority from the statute, the court goes on to declare substantially that, because the statute does not forbid the bringing of such a suit, the court may authorize it. It says:

"There is nothing in the statute which justifies the conclusion that, if a stockholder's liability is not enforced in the original action because he is a nonresident, an ancillary action may not be brought against him alone after the amount for which stockholders are individually liable has been determined in the original action."

It seems to me that the plaintiff receiver derives his authority to bring the present suit solely from the order of a court in another jurisdiction, and not from anything contained in the Minnesota statute; that he has no title to the property by assignment, conveyance, or force of law, and no interest in, or right to, the property other than is derived from the order of the court appointing him; and that, under such circumstances, the law is well settled that the plaintiff cannot maintain the present suit in a foreign jurisdiction. For these reasons I am unable to agree with the opinion of the majority of the court.